**Harry William THERIAULT, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18868.**

United States Court of Appeals
Eighth Circuit.

Sept. 6, 1968.
Certiorari Denied Feb. 24, 1969.
See 89 S.Ct. 898.

William I. Prewett, El Dorado, Ark., for appellant.

Charles M. Conway, U. S. Atty., Fort Smith, Ark., for appellee.

Before VAN OOSTERHOUT, Chief Judge, BLACKMUN, Circuit Judge, and VAN PELT, District Judge.

BLACKMUN, Circuit Judge.

Harry William Theriault, born December 11, 1937, who has used the names of Gerald Samuel Clevinger and Joseph W. Cline, after a plea of not guilty to a one-count indictment, was convicted by a jury of a violation of 18 U.S.C. § 2113(b).[1] The indictment charged Theriault with taking, on or about December 11, 1966, and with the prescribed intent, money aggregating more than $100 belonging to a Parkdale, Arkansas, bank the deposits of which were then insured by the Federal Deposit Insurance Corporation.[2] Chief Judge Harris imposed a sentence of 10 years; this is the maximum prison term prescribed by the statute. Theriault appeals in forma pauperis.

The Parkdale bank was entered and robbed during the night of Saturday, December 10, 1966. Silver aggregating $1,250, some traveler's checks, and other property were taken. The defendant and William Johnson Huddleston,[3] who

---

1. "§ 2113. Bank robbery and incidental crimes

\* \* \* \* \*

"(b) Whoever takes and carries away with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank \* \* \* shall be fined not more than $5,000 or imprisoned not more than ten years, or both; \* \* \*."

2. In the defense's opening statement to the jury, reference was made to prior difficulty encountered by the defendant. Theriault, on the stand, also mentioned this. See Theriault v. State, 123 So.2d 234 (Miss.1960); Theriault v. State, 240 Miss. 54, 126 So.2d 504 (1961).

3. Huddleston, prior to Theriault's trial, pleaded guilty to a federal charge similar to that lodged against Theriault.

has used the name of Glendale Sam Gillespie, were arrested about 7 p. m. the following day, Sunday, at the Sahara Junior Motel in DeWitt, Arkansas, some miles north of Parkdale. The arrest was by local police who possessed neither an arrest warrant nor a search warrant.

The defendant here asserts (A) the impropriety of the trial court's denial of his motion to suppress evidence; (B) prejudice and deprival of a fair trial because of the court's many references to the charge as one of "bank burglary"; (C) error in the submission of an instruction on aiding and abetting; (D) error in the arresting officers' failure to advise the defendant of the reason for his arrest; and (E) error in not taking the defendant forthwith before a magistrate or United States Commissioner.

A. *The motion to suppress.* The evidence which was the subject of the motion to suppress consisted of (1) items (acetylene torches, other tools, wrapped coins, loose coins, cloth money bags, and a black bag in an open cardboard box) in the bed of a pickup truck driven to the motel by Huddleston and the defendant; (2) a pistol and traveler's checks under the mattress on the bed in the motel room occupied by Theriault at the time of his arrest; (3) items (a cigar box and the money in it) on the floor of the cab of the truck; and (4) items (a pistol and loose and wrapped coins) in the truck's glove compartment.

Judge Harris held a full and lengthy hearing on the motion. He filed detailed findings and conclusions and denied the motion. United States v. Theriault, 268 F.Supp. 314 (W.D.Ark.1967).

We need not here repeat the findings of fact made by the trial court. This material is set forth at pp. 315–321 of 268 F.Supp. We have carefully read the transcript of the hearing on the motion to suppress and we readily conclude that the facts so found have adequate and, indeed, overwhelming support in the record.

The defense does not here really challenge the facts so found. It asserts, instead, that those facts demonstrate that the items seized were all improperly taken. The argument is that Theriault already "was in custody and placed in a police car under armed guard" at the time his motel room was searched; that search of the truck was not undertaken until after the arrest and, as to some items, until after the defendant had been taken to the police station; and that his warrantless arrest was not on probable cause.

■ We look first at Theriault's arrest. Its lawfulness is to be determined by state law insofar as it is not violative of the federal constitution. Miller v. United States, 357 U.S. 301, 305, 78 S. Ct. 1190, 2 L.Ed.2d 1332 (1958); United States v. Di Re, 332 U.S. 581, 589, 68 S. Ct. 222, 92 L.Ed. 210 (1948). The applicable Arkansas statute, Ark.Stat.Ann. § 43–403 (Repl.1964), reads:

"43–403. Peace officer, when may arrest.—A peace officer may make arrest:

\* \* \* \* \* \*

"Second. Without a warrant, where a public offense is committed in his presence, or where he has reasonable grounds for believing that the person arrested has committed a felony."

We equate this statutory standard of reasonableness with probable cause. Trotter v. Stephens, 241 F.Supp. 33, 40 (E.D.Ark.1965), aff'd. 361 F.2d 888, 892 (8 Cir. 1966), cert. denied 386 U.S. 964, 87 S.Ct. 1040, 18 L.Ed.2d 113.

■ The Supreme Court and this court on many occasions have enunciated the standard of probable cause applicable for a warrantless arrest. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Feguer v. United States, 302 F.2d 214, 245–248 (8

Cir. 1962), cert. denied 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110; Schook v. United States, 337 F.2d 563, 565 (8 Cir. 1964); Cotton v. United States, 361 F.2d 673 (8 Cir. 1966); Rodgers v. United States, 362 F.2d 358, 361 (8 Cir. 1966), cert. denied 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454; Gullett v. United States, 387 F.2d 307, 309 (8 Cir. 1967).

Some or all of the arresting officers (Chief Harrison, Ferguson and Munnerlyn) were aware, prior to the arrest, of the offense at the Parkdale bank the night before. They were aware that a large amount of silver had been taken from the bank on that occasion. They had been advised, not only by the operator of the restaurant at the motel in DeWitt, but by word received through police radio channels, that two white men driving a late model pickup truck, with a black vinyl top and a missing rear bumper, were the suspects, and that one of these men had an injured foot. They knew also (1) that Clevinger (Theriault) and Gillespie (Huddleston) had registered at the Sahara early that afternoon; (2) that one of them had a foot so severely injured that he had to be assisted by the other to his room; (3) that the second man had ordered food from the motel restaurant to take out; (4) that the second man had passed at the restaurant a questionably signed traveler's check and, in exchange for a $5 bill, ten then seldom seen Kennedy half dollars; (5) that the two had arrived at the motel in the pickup truck now backed up before their room; (6) that the men and their truck, even to the missing rear bumper, fit the descriptions of the bank robbery suspects and the suspects' vehicle; (7) that in the bed of the truck were cutting torches and other tools suitable for effectuating a robbery, and coins, both wrapped and loose, and money bags; and (8) that the two men indicated they were planning to leave the motel at seven o'clock and not stay all night.

■ We readily conclude that the information in the hands of these Arkansas police officers provided probable cause for Theriault's arrest and compares more than favorably with facts we have adjudged sufficient for probable cause in recent cases: Feinstein v. United States, 390 F.2d 50, 53 (8 Cir. 1968) (knowledge of burglary; taking of money orders and other equipment; information supplied by reliable informer; corroboration; a fulfilled anticipated meeting of informer and defendant); Churder v. United States, 387 F.2d 825, 830 (8 Cir. 1968) (recent area burglaries; taking of money orders and equipment; the directing postal inspector's knowledge of the burglaries; statements from informer; defendant's presence at a particular place as anticipated); Gullett v. United States, supra, pp. 310–311 of 387 F.2d (purchase of a tire with quarter dollars; attempt to sell cigarettes with an indication different brands were for sale; absence of driver's license; inability to produce proof of car's ownership; production of ownership documents for other automobiles; awareness by arresting officers of recent area burglaries where cigarettes and coins had been taken); Rodgers v. United States, supra, p. 361 of 362 F.2d (correspondence of defendant's car with one stolen; failure to have operator's license in possession; radio verification that the defendant's car bore plates of one stolen); Harris v. Stephens, supra, 361 F.2d 888, 893 (8 Cir. 1966), cert. denied 386 U.S. 964, 87 S.Ct. 1040, 18 L. Ed.2d 113 (victim's escort's descriptions of assaulters and their automobile; information as to ownership of automobile so described; presence of car in driveway of one defendant; identification of car by victim's escort; stains on upholstery and heat in engine; blood stained clothes on both defendants; presence of victim's wristwatch in billfold of one defendant); Cotton v. United States, supra, p. 675 of 361 F.2d (tender of a suspicious twenty dollar bill for a small purchase; concern on the part of two service station attendants; advice from secret service agent that bill was probably counterfeit; defendant's inability to explain where he obtained it; the hour

of the night; sudden discovery of a smaller good bill after a representation that the bogus twenty was all defendant had); Caldwell v. United States, 338 F. 2d 385, 388 (8 Cir. 1964), cert. denied 380 U.S. 984, 85 S.Ct. 1354, 14 L.Ed.2d 277 (officer's knowledge of bank robbery; identification by several witnesses of defendant from photographs; registration under defendant's name of license number of automobile used by robber); and Shook v. United States, pp. 565, 566 of 337 F.2d (presence on vehicle in which defendant was riding of plate issued to burglar who might be operating in area; refusal to stop upon signal; attempt to avoid recognition; flight at excessive speed; discard of objects from the automobile).

In addition, the fact that the motel manager and a guest who had heard the news telecast, and who together had examined the truck and seen the tools in its bed, independently concluded that the defendant and Huddleston were the Parkdale bank robbers attests to the situation's probable cause. They felt so strongly that they sought out, albeit unsuccessfully, the local deputy sheriff.

With probable cause for the arrest so clearly present, we turn to the evidence seized:

 1. The items in the bed of the truck. These were in plain sight. They had been observed by the arresting officers prior to the arrest as they stood in the motel's lighted parking area. This pre-arrest observation does not constitute a search, Cotton v. United States, 371 F.2d 385, 394 (9 Cir. 1967); Busby v. United States, 296 F.2d 328, 331 (9 Cir. 1961), cert. denied 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278; United States v. Callahan, 256 F.Supp. 739, 745 (D.Minn.1964), and these items were not subject to suppression.

 2. The pistol and the traveler's checks under the mattress of the bed on which Theriault was lying in the motel room. These items are not to be suppressed if they were discovered on an appropriately limited, that is, a reasonable search incidental to Theriault's lawful arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). See Warden Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Clearly, the search was incidental to the arrest and was reasonable. Huddleston, on command, had emerged from the motel room with his hands in the air. He told the chief that Theriault had a gun under his mattress. Officers Munnerlyn and Ferguson entered the motel with pistols drawn. They physically assisted the injured Theriault between them out of the room and into the patrol car where Huddleston already was seated. The chief then immediately entered the room, went direct to the bed, and located the gun and the checks under its mattress. He found the weapon exactly where Huddleston had said it would be found. It would be unrealistic and formalistic to hold that the search and seizure of the mattress items were not contemporaneous with the arrest or were not incidental to it. The protection of Theriault's Fourth Amendment rights does not demand so much.

 3. The items on the floor of the cab. These, too, were in plain sight of anyone entering the cab as did Officer Munnerlyn. The keys had been left in the truck. Munnerlyn's driving the truck to the station, with Huddleston and Theriault in the patrol car preceding it, was a part of the arresting process. These items were reasonably believed to be the fruits of the crime and they were in a vehicle reasonably believed to have been utilized in the commission of that crime. On all fours factually with this aspect of the present case are the tools, rolls of quarter dollars and brass fittings under consideration in Price v. United States, 121 U.S. App.D.C. 62, 348 F.2d 68, 70 (1965), cert. denied 382 U.S. 888, 86 S.Ct. 170, 15 L.Ed.2d 125. See Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

4. The items in the glove compartment. Had these been discovered, as

were the mattress items, upon a search of the truck made forthwith upon the arrest of the two men, they would have been the product of a search incidental to, and contemporaneous with, the arrest. The fact the arrest was made at the motel, but not while the men were in or emerging from the truck, would not compel a contrary conclusion. Drummond v. United States, 350 F.2d 983, 987 (8 Cir. 1965), cert. denied Castaldi v. United States, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542; Churder v. United States, supra, p. 832 of 387 F.2d; Gullett v. United States, supra, pp. 311–13 of 387 F.2d; Price v. United States, supra, p. 70 of 348 F.2d (with respect to the envelope therein described).

But the items in the glove compartment appear to have been taken after the truck had been driven the few blocks to the police station. Although we are inclined to be sympathetic with the trial court's conclusion, p. 324 of 268 F.Supp., that this "was but an uninterrupted and continuing action of the police controlled by the lawful arrest of the defendant", we need not decide whether these items were or were not properly seized. At the very most they were only another pistol and other coins in addition to the pistol under the mattress and to the coins in the truck's bed and on the floor of the cab. The case is a strong one against the defendant and these glove compartment items, being no more than cumulative, could not possibly have been prejudicial. Criminal Rule 52(a); United States v. Ramseur, 378 F.2d 902, 903 (6 Cir. 1967); Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The motion to suppress was therefore properly denied.

■ B. *The references to "bank burglary"*. It is pointed out that this term was used by the court in conversations with defense counsel; that it was employed on the voir dire; that in its findings and conclusions the court used the term or its derivative "at least sixteen times"; and that the court advised the jury that the appellant was indicted for bank burglary and made references to such a charge throughout the trial.

No authority is cited in support of the defense claim that all this amounts to prejudicial error.

The indictment charged Theriault with a violation of 18 U.S.C. § 2113(b). This is the larceny subsection. We fail to see, however, how any prejudice could possibly have resulted from what the defense complains of here. Court-appointed trial counsel for the defense, as is obvious from the record, were experienced and knowledgeable and were misled in no way. Counsel were familiar with the indictment and with what it charged. They, too, used the term "burglary" on occasion. Some use of the word throughout the proceeding was almost inevitable, for the bank at Parkdale had been burglarized and the items stolen from it were the fruit of that burglary. The court nevertheless was careful to delineate for the jury the charge against the defendant and the requirements for a conviction. It read the indictment nine times on the voir dire. The prosecutor read it in his opening statement; defense counsel read it in his questioning of Theriault; the court read it in its instructions. There are references in the transcript to larceny and robbery, for the crime was not always referred to as a burglary. We encountered a somewhat similar claim in Beatrice Foods Co. v. United States, 312 F.2d 29, 47 (8 Cir. 1963), cert. denied 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199, and found it without merit. There is no merit in the point here.

C. *The instruction as to aiding and abetting*. No challenge is made as to the form of the instruction. The complaint is as to its appearance and use.

The argument is that, although it was proved that Theriault was with Huddleston (whom the defense brief describes as "the self-admitted participant" in the robbery) both before and after the commission of the crime, and knew of a plan to rob an Arkansas bank, it was

never demonstrated that Theriault was at the bank in Parkdale at any time; that the jury returned to request the repetition of the instruction on aiding and abetting; that ten minutes after the court had properly repeated all its instructions a verdict of guilty was rendered; that a charge of aiding and abetting was not part of the government's case; and that the defendant was not informed of that charge. This all comes down to three subpoints:

■■■ 1. That the evidence is insufficient to support a conviction for aiding and abetting. We of course view the record in the light most favorable to the prosecution. There is evidence, most of it from the lips of Huddleston and Theriault themselves, that Huddleston met Theriault at the Mississippi penitentiary in the early 1960's; that he associated with Theriault because the latter was "best at stealing"; that Huddleston had cased the Parkdale bank and had told Theriault about it; that they were in and left Tennessee together; that the truck used in the robbery, and which was outside the motel room where Theriault was arrested, was stolen; that Theriault knew it was stolen; that on December 10 the two were together in a motel at Wynne, Arkansas, and discussed the Parkdale bank; that the truck contained stolen license plates, a stolen acetylene torch, and other tools; that the men agreed to meet after the Parkdale job; that it was Theriault who suggested that each have a road map prepared showing an escape route; that the truck was seen parked outside the bank early on the morning of the offense; and that the men were together shortly after the robbery. Theriault also testified that he knew the police were outside the motel and that Huddleston handed him the pistol and traveler's checks and he put them underneath the mattress.

All this is sufficient to support a conviction of aiding and abetting. It is true, of course, that both Huddleston and Theriault on the stand denied Theriault's presence at Parkdale and that Theriault testifed he had left Huddleston and would have no part in the robbery. The jury chose to disbelieve their story. We are not in a position to reject the jury's resolution of the evidence.

■■■ 2. That the indictment failed to charge a violation of 18 U.S.C. § 2 as an aider and abettor and that the defendant was convicted of a crime with which ` he was not charged. We, of course, have no way of knowing whether the jury reached its conviction conclusion through the aiding and abetting route. But even if it did, Nassif v. United States, 370 F.2d 147, 155 (8 Cir. 1966), is adverse authority to the defense position. This court there said "An aider and abettor may be indicted directly with the commission of the substantive crime and the charge may be supported by the proof that he only aided and abetted in its commission". Precisely to the same effect is United States v. Lester, 363 F.2d 68, 72 (6 Cir. 1966), cert. denied 385 U.S. 1002, 87 S. Ct. 705, 17 L.Ed.2d 542.

3. That the defense was surprised for it had no notice of the charge of aiding and abetting and no opportunity to be heard on that issue, and that it was denied fundamental fairness. We see no surprise or unfairness. The facts proved and, indeed, the very testimony of Huddleston and Theriault—to the effect that Theriault shared plans and activities before and after the offense—negate surprise and make this aspect of the argument border on the frivolous.

D. *Failure to advise the defendant of the charge against him.* It is suggested that when Theriault was arrested, the officers failed to comply with the provisions of Ark.Stat.Ann. § 43–416 (Repl. 1964). This statute reads:

"43–416. Duty to inform person arrested.—The person making the arrest shall inform the person about to be arrested of the intention to arrest him, and the offense charged against him for which he is to be arrested, and, if acting under a warrant of ar-

rest, shall give information thereof, and if required, show the warrant."

Clearly, the first requirement of the statute, namely, that the officer inform the person about to be arrested of the intention to arrest him, was fulfilled. This information was conveyed to Theriault and Huddleston when the motel manager carried out Chief Harrison's instructions to telephone the men in their rooms and advise them they were surrounded by police and to come out with their hands up. It is the second requirement, that the person be informed of the offense charged against him, which is said to be unfulfilled here.

█ What constitutes compliance with this statute is, of course, a matter of Arkansas law. The State's Supreme Court tells us that the statute "is designed for the protection of the citizen, who may not be deprived of his liberty and taken into custody without being advised of the reason for that action." Minton v. State, 198 Ark. 875, 131 S.W. 2d 948, 950 (1939). The court, however, also said there, "this statute has no application when the offense is committed in the presence of the officer, and the offender knows that the officer has seen him commit the offense". Bookout v. Hanshaw, 235 Ark. 924, 363 S.W.2d 125, 127 (1962), is to the same effect.

█ There is testimony in this record that Chief Harrison and Officer Munnerlyn did not tell Theriault why he was under arrest. There is also testimony in the record that Theriault made no inquiry as to why he was being held. On the other hand, a United States Commissioner testified that he told the defendant on December 13 "exactly what it was all about".

In any event, the point loses significance in the light of the fact that possession of stolen goods, knowing them to be stolen, with intent to deprive the true owner thereof, is a crime under Arkansas law. Ark.Stat.Ann., § 41-3938 (Repl. 1964). So, too, is the possession of any implement designed or commonly used for breaking and entry. The arresting officers, as hereinabove held, had probable cause to believe Theriault and Huddleston were in knowing possession of stolen goods and of burglary tools and that they were violating, in the officers' presence, the Arkansas statutes cited. See United States ex rel. Coffey v. Fay, 242 F.Supp. 382, 385 (S.D.N.Y.1965), aff'd. 356 F.2d 460 (2 Cir. 1966), cert. denied 386 U.S. 1014, 87 S.Ct. 1350, 18 L.Ed.2d 450.

With an offense committed in the presence of the officers, the statute, as the Arkansas court said, "has no application". These men clearly knew why they were being arrested and Theriault's protest to the contrary has only a hollow ring. They were in need of no inquiry and they were deprived of no information.

█ E. *Failure to be taken before a magistrate or United States Commissioner.* The defense also seems to suggest that there was a violation of the requirements of Criminal Rule 5(a) and of Ark.Stat.Ann., § 43-601 (Repl.1964), that the defendant forthwith be taken before a United States Commissioner or magistrate. This point, too, has no merit. The arrest was on a Sunday evening. Because of his obvious and painful injury, the defendant was considerately taken by ambulance immediately to Little Rock for hospitalization. United States Commissioner Coates was called to the Arkansas Medical Center on the afternoon of Tuesday, December 13. He conducted no formal preliminary examination at that time because he had not yet received the warrant and complaint. Yet he saw the defendant, advised him of the charge and of certain rights he possessed, and set the bond. What is important, however, is that there is nothing elicited from Theriault at this point which was admitted in evidence at his trial. Nothing was forthcoming as a result of his not having an immediate preliminary examination. At oral argument the defense conceded that no prejudice was sustained.

The judgment of conviction is affirmed.