**Roy E. COOK, Petitioner,**

v.

**Maurice H. SIGLER, Respondent.**

**Civ. 1391L.**

United States District Court
D. Nebraska.

April 22, 1969.

---

Robert L. Anderson, Lincoln, Neb., for petitioner.

C. C. Sheldon, Asst. Atty. Gen. of Nebraska, Lincoln, Neb., for respondent.

## MEMORANDUM AND ORDER

VAN PELT, District Judge.

Petitioner's application for a writ of habeas corpus now stands submitted before this court. The petitioner has exhausted his state court remedies. State v. Cook, 182 Neb. 684, 157 N.W.2d 151 (1968). Counsel was appointed for the petitioner, a hearing was had, oral argument was waived, and the case now stands ready for decision.

The petitioner, along with one George Watson and one Octaviano Perez, was ar-

rested on May 29, 1966, in Omaha, Nebraska. The petitioner and Perez were tried jointly and both were convicted of possession of burglary tools and burglary. The petitioner is presently incarcerated in the Nebraska Penal and and Correctional Complex serving concurrent terms of three and seven years. The facts concerning his arrest and conviction, so far as they are relevant, are as follows. In the early morning hours of May 29, 1966, on the eve of Memorial Day, police officers John Sobeski and Lee Pietramele were driving in an easterly direction in the area of 24th and Harney Streets, in Omaha. These two officers noticed two men walking along the east side of the Omaha Auto Glass building. It was daylight at this time and the car lights were not turned on. They were about thirty feet distant. The police officers observed the two men walk south out of the front end of the Omaha Auto Glass building, then walk west to the northwest corner of the building, and then turn into a driveway walking north again. As the two men turned the corner, both bent down as if pulling something from their clothing. Officer Sobeski saw something in one man's hand, but he could not see the second man. Sobeski then parked the cruiser car, and at this time the two men being observed were walking quite rapidly to the north. The two men were stopped and searched. No weapons were found, but a flashlight was found on Perez. The other man was Watson. Officer Sobeski then returned to the place where he had seen the two men seemingly pulling something out of their clothes and bending over. Here, in a patch of weeds close to the building, Sobeski found two crowbars and a screw driver. The tools were lying unrusted in the pushed-over grass. Watson and Perez were arrested.

Sobeski then began a search of nearby buildings, but he found no evidence of burglary. He did, however, observe a man sitting in a 1960 Rambler station wagon with Missouri license plates. The man was reading a newspaper at the time

he was observed. The officer approached the car and asked the occupant for identification. The man was the petitioner herein, Roy Cook. As Officer Sobeski was asking for identification, he observed through the window two tools sticking out from the passenger side of the front seat. (T. Vol. 1, p. 117) Officer Sobeski requested that Cook come with him, and the petitioner willingly complied with the request. As they approached Perez, who was standing outside the police cruiser, Perez allegedly said to Cook, "So they got you, too." or words to that effect (T. Vol. 1, p. 129). At the time that Perez uttered these words the petitioner and Officer Sobeski were approximately ten to fifteen feet away from Perez. The officer then formally placed Cook under arrest (T. Vol. 1, p. 129). The officers then called for another cruiser and the Detective Bureau to assist them in transporting the prisoners and impounding the vehicle. Officer Sobeski did not help in transporting Cook. He was placed in another cruiser and taken to the police station. Officer Sobeski drove the cruiser to the place where the Rambler station wagon was parked and searched it without Cook's consent. He found a 30-inch pry bar under a pillow on the back seat and a pry bar and a screw driver under the passenger side of the front seat; these latter two items were the tools that Sobeski had seen as he looked through Cook's window while he was identifying Cook. Further search of the spare tire well and glove compartment revealed a pry bar, a tire iron, two screw drivers, three pairs of pliers, two punches, and a brake-adjusting spoon.

At the police station Perez was interrogated and he gave a Missouri address. He stated that he had come to Omaha with Cook and Watson; that he had come to Omaha looking for places to "hit"; that he considered Omaha an easy place to hit; that he did not commit burglaries himself but that he "set up the jobs for other fellows"; and that he had come to Omaha "during the night". (T. Vol. 2, pp. 311–12) He had in his

possession various gasoline slips dated May 28, 1966, showing charges at stations between Kansas City and Omaha. He also had in his possession a key to room 3 of the Eddington Hotel in Omaha, and he admitted registering at the hotel on Saturday, May 28, 1966.

Cook was also interrogated and gave a Kansas address. He stated that he knew Watson, but that he had not met Perez prior to May 27, 1966; that the three had traveled from Overland Park, Kansas, on May 27 and 28 to look for work in Omaha. He described his activities of the previous day and denied having been with Perez and Watson during most of the evening preceding his arrest.

At approximately 9:15 A.M. on May 29th, the Omaha Police Department was notified that a drug store had been burglarized. A tire iron found in the petitioner's car was said to have fit the indentation made on the door jamb of the drug store. On May 31, after prior searches of room 3 of the Eddington Hotel, the Omaha Police found a box under a bureau which contained drugs, money bags, which, in part at least, were identified as belonging to the Kubat Drug Store (T. Vol. 1, p. 40). Fingerprints were also taken, but none could be identified as those of Watson, Perez, or Cook.

Petitioner and Perez were tried jointly and both were found guilty of possession of burglary tools and burglary. Counsel for the petitioner objected to the introduction of Perez's admissions and statements that he made at the time of the arrest and at the police station on the ground that they were hearsay as to Cook. The trial court sustained the motion for the time being, but at the end of the trial, instructed the jury that "if you find from the evidence beyond a reasonable doubt that the two defendants were associated in a crime or crimes, if any, in furtherance of a common design, plan, or conspiracy, the statements and admissions of any defendant would be admissible as to both defendants, and the exhibits introduced during the trial with respect to one such defendant would be admissible as to both defendants." (T., Supreme Court of Nebr. Instruction No.21, Ex. 5 herein.)

The facts in this case are not in dispute. The parties have entered into a "Stipulation of Uncontroverted Facts" and the Stipulation was received in evidence at the hearing (Ex. No. 6). The issues, however, involve some of the most highly sensitive and complex areas of our presently evolving criminal and constitutional law. The questions to be determined are as follows:

1) Whether the arrest of the petitioner was without probable cause;

2) If the arrest was legal, then whether the subsequent search of petitioner's car and seizure of the various tools therein was incident to the lawful arrest;

3) Whether the admission against the petitioner of the statements and confession of his co-defendant Perez violated his constitutional rights.

It is the position of the petitioner that if the arrest and/or subsequent search and seizure is held to be invalid then the petitioner is entitled to the writ, for without the tools in the petitioner's car there is no evidence that he was in possession of burglary tools, and without the pry bar that tied the petitioner to the Kubat Drug Store the conviction for burglary can not stand. The petitioner also contends that if the trial court improperly instructed the jury to consider the statements of Perez, either the statement he made when he first saw the petitioner at the place of arrest, or the statement that he made at the police station to the detective, the writ must issue, for the statements of Perez were the only evidence of conspiracy, and without the evidence of conspiracy, there is no evidence to show that the petitioner intended to use the tools in his car for burglarious purposes, nor was there any evidence to directly tie the petitioner to the items found in the room Perez had taken at the Eddington Hotel. The respondent does not disagree with this position except insofar as the statement

taken at the police station is concerned. The respondent takes the position that if the statement Perez gave at the station was erroneously admitted against the petitioner, without other errors, such error would be harmless (See Brief of Respondent, pp. 10–12).

–1–

*The Arrest of Petitioner.*

The petitioner takes the position that the arrest occurred not after Perez had said, "So they got you, too," as was held by the Nebraska Supreme Court, State v. Cook, supra, 182 Neb., at pages 686–687, 157 N.W.2d 151, but rather that it took place when the officer requested that Cook come with him and the petitioner complied with the request. The petitioner concedes that the police had a right to stop and question him (See page 17, Brief of Petitioner). Petitioner argues that such a right is limited in scope and that at the time that Sobeski took the petitioner to the cruiser car the arrest took place. If the petitioner is correct in his assertion, then the cause for the arrest would be that the petitioner was sitting in his car, reading a paper during the early morning, but in daylight hours, in a hotel parking lot which was situated three quarters of a block from where two men had just been arrested for possession of burglary tools, with a screw driver and a pry bar partially visible to the officer. If the arrest took place when the petitioner left his car for the police cruiser, then it took place before Sobeski heard Perez say to the petitioner that they had "got him, too." Respondent takes the position that even without the statement by Perez the police had probable cause for arrest.

At the outset, this court agrees with the position taken by the petitioner; that is, if the arrest occurred before the officer heard Perez incriminate the petitioner, it was without probable cause. Officer Sobeski was simply not aware of any information which tied the petitioner to the two arrested men. Without

this connection, there is nothing to indicate that the petitioner intended to use the tools for illegal purposes. Unlike the situation in Carpenter v. Sigler, Civ. 1394L, decided by this court January 30, 1969, the officer did not ask for an explanation of the presence of the tools. The petitioner testified at the evidentiary hearing held in this court that he was unaware of the fact that the officer had seen the tools. Consequently, he was not even in the position to volunteer an explanation. The respondent would seem to ask the court to connect the petitioner with the two arrested men due to the fact that "It is typical modus operandi for burglars to utilize the services of a getaway vehicle and driver." (See page 11 of Brief of Respondent). This court refuses to grant the request. It may well be that it is the usual method of operation to have a car and driver close at hand to effectuate an escape. The police are undoubtedly justified in making inquiry into those who are parked in a close proximity to the scene of a crime. In fact, they would undoubtedly be roundly condemned by their superiors and by the society that employs them if they did not do such investigatorial work. To justify or demand an investigation and to support probable cause for arrest are two different things. Had the officer made further inquiry of the petitioner when he was sitting in his car, a basis for probable cause conceivably could have arisen. On the facts before this court, however, probable cause for an arrest did not exist at the time he started his inquiry or when he had completed it.

Locating the time and place at which the arrest took place is a more difficult question. In the "Stipulation of Facts" (Ex. 6, p. 2, herein) it is stated that Sobeski "ordered" the petitioner to accompany him to the cruiser. At the trial Sobeski testified that he "asked" the petitioner to come with him, although this court recognizes that a command may come in the form of an interrogatory (T. Vol. 2, p. 182). The Nebraska Supreme Court used the term

"accompanied". State v. Cook, supra, 182 Neb. at page 686, 157 N.W.2d 151. The petitioner testified at the evidentiary hearing held in this court that he was asked and he went voluntarily because he thought that he was under arrest and because he had just finished doing a lengthy sentence in prison. Since the word "arrest" is often defined in terms of restricting liberty of movement, Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), and since "seizure" has been defined in substantially the same manner, Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), it may well be important to determine if the petitioner had any alternative but to comply with the request, or command, of Officer Sobeski. The petitioner went, to use his own word, "voluntarily". This was his prerogative, and undoubtedly the prudent thing to do. United States v. Di Re, 332 U.S. 581, 594–595, 68 S.Ct. 222, 92 L.Ed 210 (1948). Yet the amount of restraint that is required to constitute an arrest is not easily determined. If an individual is stopped and asked his name and identification he is, in a sense, restrained. No one contends that this is an arrest and the petitioner concedes that the police have a right to do so. Yet his freedom is restricted in that he must take the time to answer the question(s) propounded or, perhaps, force the officer to either restrain him more, or let him go. If the officer has the right to stop and ask investigatory questions, he would seemingly be entitled to some sort of answer. Yet if the individual refuses to answer in any way, and the officer is more insistent upon an answer, this would be an additional restraint to the initial restraint, and might constitute an arrest. Yet refusal to answer is unlikely to provide a basis for probable cause in many situations. If his only alternative is to let him go then the right to stop is meaningless. In sum, what this court is trying to point out is that there are more types of conduct than simply an instantaneous questioning for identification purposes and arrest. As was noted in Terry, supra, 392 U.S. at page 16, 88 S.Ct. 1868, not every "seizure" is an "arrest" in the traditional sense, and, at page 19, 88 S.Ct. 1868, footnote 16, not all personal intercourse between policemen and citizens involves "seizures" of persons.

Nor does the law of arrest depend upon what the officer thought was the time that it took place. In the present case, Officer Sobeski announced that the petitioner was under arrest after he had heard the remark by Perez that tied the petitioner to Perez and Watson. See, Massey v. United States, 358 F.2d 782 (10 Cir. 1966); Seals v. United States, 117 U.S.App.D.C. 79, 325 F.2d 1006 (1963). On the other hand, the time and place of arrest cannot be based solely upon the subjective thoughts of the individual citizen. Instead, it must be determined by the objective circumstances and the responses which they are likely to evoke. See, Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305, 315 (1967), Leventhal, J. concurring; Carpenter v. Sigler, supra, at page 7. Probable cause depends on the "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). On the other hand, judicial scrutiny must be the constant protection of the Fourth Amendment. Terry, supra, 392 U.S. at page 21, 88 S.Ct. 1868.

The petitioner argues that the petitioner was under arrest at the time that he followed the officer to the cruiser, if he was not already under arrest at the time that he got out of his car when asked, or commanded, to go with the officer. In support of this position the petitioner relies on several cases among which are Henry, supra; Bailey, supra; Massey, supra; and, perhaps most analogous to the present case, Kelley v. United States, 111 U.S.App.D.C. 396, 298 F.2d 310 (1961). In Kelley the police entered a restaurant and asked that he come outside with them. The court held

that the defendant was arrested at the time that he was escorted out of the building. The police in *Kelley* had absolutely no reason for making the request. One of the officers went into the restaurant to see if anything was wrong. He had no idea if anything was wrong in the business premises or with Kelley himself. This is not exactly the same situation as when a crime has been committed in the immediate area in which the petitioner was located. Nor does this court believe, as was implied earlier in this opinion, and as it held in *Carpenter, supra,* that Henry v. United States, *supra,* requires the holding that every restraint of freedom constitutes an arrest.

Respondent, on the other hand, states that what Officer Sobeski did and requested the petitioner to do was approved in Terry v. Ohio, *supra.* This court cannot agree with respondent's position. This situation is precisely that which the court in *Terry* did not have to decide, and stated that it did not decide. In 392 U.S. at page 19, 88 S.Ct. at page 1879, note 16, the Court said:

"We thus decide nothing today concerning the constitutional propriety of an investigative 'seizure' upon less than probable cause for purposes of 'detention' and/or interrogation."

The respondent next takes the position that the situation was no different than if, instead of the petitioner being taken to the police cruiser, Perez had been escorted to the point where the petitioner was being detained and the Perez statement had occurred at that time and place. The petitioner points out in his Reply Brief, at page 8, that the fallacy with this position is that it fails to take note of the fact that Perez had been arrested and, according to the officer present, petitioner had not. Quite obviously Perez could be ordered about in a lawful manner. Petitioner concludes correctly that it is not sufficient to say that because something could have been done in a lawful manner of proceeding, an unlawful procedure is therefore proper.

The question remains, however, as to whether the officer's taking petitioner to the cruiser amounted to an arrest. The petitioner seems to concede that it would have been proper procedure for the police to have taken Perez to the petitioner's car. It may well be that this method would have more properly complied with the Nebraska Statutory provision, § 29–829 (1967 Cum.Supp.). The Nebraska Supreme Court has upheld the arrest in this case and this court does not sit to review whether or not the Nebraska courts have interpreted their own law correctly. This court has to determine whether or not the petitioner was convicted in a manner that violates the Constitution of the United States. In this respect, then, this court is of the opinion that the petitioner has failed to take into account that for the police to have taken Perez to the petitioner's car would have involved further restraint of the petitioner, also. It is not the command to move which alone might constitute a restraint. Had the petitioner awaited the arrival of Perez it would surely have involved a restraint, whether it be expressly given by Officer Sobeski or only implied. The nature of such a restraint, waiting in one's own car, as opposed to walking three quarters of a block may be a less violent restraint of one's personal liberty, although we do not decide this, but to have waited would surely have increased the duration of the restraint. Before Officer Sobeski's partner could have moved Perez to the location of Cook's car, he would have had to have been contacted by Sobeski in order to (a) have known that Sobeski was talking with Cook, and where they were, and (b) know that Sobeski wanted to have Perez and Watson brought to the location of Cook's car. In addition, it would be immeasurably more difficult for Sobeski's partner to have moved two individuals under arrest than for Sobeski to move one individual. Thus, this court concludes that if the police would have been justified in holding petitioner until Perez arrived, then they were also justified in moving the petitioner to Perez.

This court is of the opinion that the conduct of the policeman, under the circumstances of this case, was reasonable, and that the ordering of the petitioner (we assume, for the purposes of decision, that the petitioner was ordered and did not have the freedom to stay in the car or go in another direction) to go with him to see the other detectives, did not constitute an arrest. See, Seals v. United States, 117 U.S.App.D.C. 79, 325 F.2d 1006 (1963); United States v. Vita, 294 F.2d 524 (2d Cir. 1961); Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305, 312 (1967), Leventhal, J. concurring. Here the officer had just apprehended and arrested two individuals for possession of burglary tools. They were on foot when arrested. It seems likely that they would have some sort of transportation handy. The police officer talked with the petitioner, and while he offered an explanation for his presence in his car, it was not an explanation which might tend to alleviate the need for further inquiry. Officer Sobeski saw the tools on the floor of the car. While, as we have pointed out, this would not constitute probable cause, it certainly called for additional investigation. The petitioner seems to concede that he could have been lawfully held until the arrival of Perez, but assuming that he could not have been, the only alternative open would have been to let him go. It is impossible to foresee what the result of that would have been. It may have resulted in endangering the lives of the policemen; it may have resulted in a chase; it may have resulted only in the petitioner's leaving the area, or any of several other events which could have occurred. This court is of the opinion that the possibility of any of the several events occurring justified the use of this investigative seizure. The need of the police to momentarily detain and inconvenience was both urgent and substantial. The invasion on the petitioner's rights were justified.

The statement of Perez, added to what the police were aware of before, provided them, and especially Officer Sobeski, with probable cause to arrest. This court therefore finds that the arrest did not occur until the time that Officer Sobeski informed him that he was under arrest and that at that time it was made with probable cause. Consequently, the issue as to the legality of the search and seizure, if the arrest was without probable cause, need not be decided.

–2–

*The Search of Petitioner's Car.*

After the petitioner had been placed in a police car and was on his way to the station, Officer Sobeski drove his cruiser to the place where the petitioner's car was parked. He then proceeded to search the car thoroughly. The search was made without a warrant, and without the petitioner's consent. The question thus becomes whether the search was made incidental to a lawful arrest. Since this court has determined that the arrest was lawful, the discussion on this question focuses around the meaning and purpose of the term "incidental."

No one doubts that the Fourth Amendment is applicable to automobiles. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Losieau v. Sigler, Civ. 1313L, decided January 31, 1969. Both parties seem to agree that *Preston* is the most appropriate place from which to start. Before beginning a discussion of *Preston* and related cases, this court finds it necessary to comment briefly on Exhibits 29, 30 and 31, which were a 30-inch tire iron found under a pillow in the back seat, a tire iron found under the passenger side of the front seat, and a screw driver found under the passenger side of the front seat (See pages 194–195, Vol. II Tr.). It was the thirty inch tire iron, Ex. 30, which tended to connect the petitioner to the drug store which had been burglarized.

■ In regard to these items, suffice it to say that the Supreme Court of the United States has repeatedly held, and recently reiterated in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) Per curiam, that:

" * * * [O]bjects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. State of California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 1634, 1635, 10 L.Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924)."

Both the Court of Appeals for the Eighth Circuit, Theriault v. United States, 401 F.2d 79 (8 Cir. 1968), and this court, Carpenter v. Sigler, Civ. 1394L, decided January 30, 1969, have had occasion to apply the rule recently. The petitioner has conceded that the officer was legally justified in approaching the car. He was thus lawfully in a position to see the bar and screw driver underneath the passenger side of the front seat. No serious distinction can be drawn as to the bar under the pillow in the back seat. See, *Harris, supra,* 390 U.S. at 236, 88 S.Ct. 992. Consequently, it is beyond dispute that the three Exhibits mentioned above were admissible in evidence at the petitioner's trial.

No doubt a different rule attains when the search of the glove compartment and the tire well are considered. Modern man is compelled to put himself and his possessions behind closed doors in order to obtain the privacy he desires and seeks for himself and his family. As our society has become more complex, more interrelated, more interdependent, it is often the closed door that guards our limited sanctuaries. If Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed. 2d 730 (1967) was thought by many to have ended the short, but stormy, life of *Preston* (See, *Cooper, supra,* at page 62, 87 S.Ct. 788, Douglas, J. dissenting)

those hopes or fears have now been dispelled. In Dyke v. Taylor Implement Manufacturing Co. Inc., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), the Supreme Court specifically relied on *Preston* and distinguished *Cooper.* In *Dyke,* the petitioners protested the admission of an air rifle found under the seat of their car. At the time of the search the petitioner had been arrested, was in custody inside the courthouse, and the car in which he had been riding was parked outside.

The present case is not quite as clear. It is true that the petitioner Cook had been placed in custody and was probably on his way to the police station at the time that the search took place. On the other hand, the time lapse was minimal. (Five minutes after the arrest, Tr. Vol. 1, pp. 115–116. See, Drummond v. United States, 350 F.2d 983 (8 Cir. 1965) where it was held that a two hour search was still incidental to an arrest.) The distance from the place of the arrest and the location of the car was not inordinately large. There is testimony that the vehicle was to be impounded, and this may have justified a search under the rational set forth in *Cooper, supra* (See, Tr. Vol. 1, p. 129; Vol. 2, p. 215). This court need not speculate, however, for the Court of Appeals for the Eighth Circuit has interpreted *Preston* on several occasions.

■ The petitioner has cited numerous cases in support of his position that the search conducted here was not incidental to the arrest. To say the cases are inapposite would be less than candid. The *Preston* case is simply difficult to apply to any number of fact situations. The holding sets forth a broad principle where a case, under the search and seizure provision of the Fourth Amendment, may turn on the presence or absence of a single factor. Our determination of whether the search in this case was incidental to a lawful arrest is made easier by recent decisions by the Court of Appeals for this Circuit. Several decisions are applicable. In

Moodyes v. United States, 400 F.2d 360 (8 Cir. 1968) the court stated:

> "It is argued, however, that the search of the automobile one block away, although immediately after the arrest, was not incidental to the arrest, and, therefore, the evidence obtained in the search could not be admitted into evidence. It is undisputed that the search of the automobile took place immediately after the arrest, and in our view was not only proper but under such circumstances the arresting officer would have been derelict in his duty had he not made an immediate search of the automobile. This is so because such a search accompanying the arrest might have disclosed burglar tools, weapons or fruits of the burglary which otherwise might not have been available. If time had been consumed to effectuate obtaining of a search warrant and returning to the vehicle, an accomplice might well have moved the car or at least stripped it of any incriminating evidence."

In addition to this case, the conclusion of this court that the search of Officer Sobeski was lawful is supported by Feinstein v. United States 390 F.2d 50 (8 Cir. 1968); Churder v. United States, 387 F.2d 825 (8 Cir. 1968); Gullett v. United States, 387 F.2d 307 (8 Cir. 1967); Drummond v. United States, 350 F.2d 983 (8 Cir. 1965), cert. den. Castaldi v. United States, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542, and the recently decided case of Klingler v. United States, 409 F.2d 299, decided April 3, 1969 (8 Cir.). This court is of the opinion that the search of the petitioner's car tire well and glove box was "substantially contemporaneous with the arrest and * * * confined to the immediate vicinity of the arrest." Stoner v. California, 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856 (1964).

▆▆▆ Even assuming that the search of the tire well and glove box was not incidental to the arrest, it is difficult to see how the admission of the evidence could have been anything but harmless error. See, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). It was Ex. 30, found in the back seat, that connected the petitioner to the drug store. Exhibits 29, 30, 31, by themselves, would have been sufficient to have constituted the offense of possession of burglary tools. It is doubtful that the additional exhibits found in the car could have been more than cumulative. Theriault v. United States, *supra*, 401 F.2d at page 84.

In conclusion, this court holds that the search of the petitioner's car was incidental to a lawful arrest. The evidence taken from the car was properly admitted.

–3–

*Statements by Perez.*

The petitioner objects to the use of statements made by Perez on two different occasions. The first is that statement that Perez made at the police cruiser as the petitioner approached the car (Tr. Vol. 2, p. 189). The second statement or admission was given by Perez at the police station and testified to by Detective Putnam and in substance related that he and Cook had been riding around the city of Omaha looking for places "to hit"; that he, Perez, did not participate in "petty burglaries" but he did plan jobs for other people; and that he had several jobs set up in Omaha and that he was in Omaha to make a decision as to what place to hit the following Sunday (Tr. Vol. 2, p. 312). Counsel for the petitioner objected to both of these statements as being hearsay as to petitioner Cook. The court sustained the objection (Tr. Vol. 2, p. 187 and Tr. Vol. 2, pp. 305–6, 312, 314) with the qualification given at page 314 of the Bill of Exceptions that if, pursuant to the court's final instructions, the jury should find a conspiracy, then the statements made by either defendant could be attributed to the other. At the close of the trial the court instructed the jury: (Tr. to the Nebraska Supreme Court, Instruction No. 21, Ex. 5 herein)

> "During the trial of this case you will recall that the Court admitted into

evidence certain statements and admissions of the defendants and instructed you that they were to be received and considered only with regard to the defendant making such statements or admissions and were not to be regarded by you with reference to the charges against the other defendant * * *.

"However, the law is that where the evidence shows a common plan, arrangment [sic] or design between two or more persons, evidence as to an act done or a statement made by one is admissible against all, provided the act be knowingly done and the statement be knowingly made during the continuance of the arrangement between them, and in furtherance of an object or purpose of the common plan or arrangement. * * *

"Therefore, in this case, if you find from the evidence beyond a reasonable doubt that the two defendants were associated in a crime or crimes, if any, in furtherance of a common design, plan, or conspiracy, the statements and admissions of any defendant would be admissible as to both defendants, and the exhibits introduced during the trial with respect to one such defendant would be admissible as to both defendants.

\* \* \* \* \* \*

"It is for you, the Jury, therefore, to make the determination from the evidence as above set out whether the defendants were engaged in a common plan, design, or conspiracy in the commission of the crimes, if any, and if you find that they were, then you may consider any and all statements made by either defendant in connection with the cases against both defendants. * * *

"If, however, you find from the evidence that the defendants were not engaged in a common plan, design, or conspiracy then you may consider the respective statements * * * only in connection with the charges against the particular defendant making such statement or admission. * * * "

The petitioner's co-defendant, Perez, took the stand and denied making the statements on direct examination (as to the statement at the cruiser, Tr. Vol. III, p. 486; as to the statements allegedly given to Detective Putnam, Tr. Vol. III, p. 490).

The statement given at the police station and testified to by Detective Putnam will be discussed first. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) held that the Confrontation Clause of the Sixth Amendment is applicable to the states through the Fourteenth Amendment. That case also held that cross-examination is an essential part of the right to confront the witnesses against oneself. The Court noted that In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed 682 (1948) held that the denial of the right to cross-examine witnesses against oneself was a denial of the Fourteenth Amendment guarantee of due process of law. The issue, as this court sees it, is whether under Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), or Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), or both *Douglas* and *Bruton*, the petitioner herein has been denied his right of confrontation under the Sixth Amendment.

At the outset, this court notes that there can be no doubt as to the applicability of both *Douglas* and *Bruton* to the present case. *Douglas* was decided before the petitioner was tried and *Bruton* was held to apply retroactively in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). The only appreciable difference between the extrajudicial statement in *Bruton* and the one in the present case is that in *Bruton* the codefendant did not testify at all so there was absolutely no opportunity for the petitioner to cross-examine; whereas, in the present case, Perez did take the stand, although he then denied ever having made the statements to Putnam. In *Douglas* (separate trials were held) the witness, who had been convicted previously, was called by the State. He had an appeal pending at the time of the petitioner's trial and availed himself of his Fifth

Amendment privilege against self-incrimination. The prosecution had him declared a hostile witness, and under the guise of refreshing his recollection, read the witness' alleged confession to him in the presence of the jury, pausing every few moments to ask the witness if he recalled having made that statement. The Court stated that "effective confrontation of Loyd was possible only if Loyd affirmed the statement as his. However, Loyd did not do so, but relied on his privilege to refuse to answer". *Douglas, supra,* 380 U.S. at page 420, 85 S.Ct. at page 1077. In the present case the co-defendant did not avail himself of the Fifth Amendment privilege, but rather he denied ever having made the statement testified to by Detective Putnam.

The respondent contends that when Perez took the stand the petitioner had the opportunity to cross-examine. He takes the position that Perez himself effectively served the purpose of cross-examination when he denied ever having made the statements. Thus he would seemingly conclude that Bruton, holding that an instruction to the jury to disregard the inadmissible hearsay an "unmitigated fiction", and *Douglas,* holding that unless the witness affirmed the statements as his own the petitioner was denied the right to confront the witness as to the veracity of the statement, are not applicable.

 At least one federal court has reached the opposite conclusion to that of the respondent. In Townsend v. Henderson, 405 F.2d 324, 329 (6 Cir. 1968), the court stated:

"The only possible distinction between the present case and *Bruton* is that in *Bruton* the co-defendant did not take the witness stand, whereas here Terry did testify in his own behalf. But, this distinction is unimportant since, although Terry was called as a witness, he denied making the confession. Townsend therefore had no effective right of cross-examination in regard to the confession. A

similar question was presented in Douglas v. Alabama * * * and it was there held 'effective confrontation of Loyd was possible only if Loyd affirmed the statement as his.'"

Prior to the above statement, on the same page of the opinion, the court had held that the rule of Bruton was "clearly applicable." The difficulty with the respondent's position is that it pits the testimony of the detective against that of Perez as to whether the statement was ever made. If the jury believes the detective, as seems likely, then there is no way that the petitioner can cross-examine Perez as to the hearsay statements that were admitted into evidence. As the Supreme Court noted in *Bruton,* 391 U.S. at page 135, 88 S.Ct. at page 1627:

"[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. [Citations omitted] Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination."

It is the ability to test on cross-examination that is the vital protection of the Confrontation Clause. *Douglas* has taught the lesson that it is not enough that the individual take the stand. It was suggested in *Bruton* that the unreliability of the evidence obviates the need for cross-examination, and it has

been suggested in the present case that Perez' denial of ever having made the statements satisfies the need for cross-examination in this case. But this is hardly the case, for it places the word of Perez against the word of the detective as to whether the statement was made, while the hearsay statement is still before the jury; and it would be an "unmitigated fiction", in the opinion of this court, to say that the subsequent denial by Perez cures the damaging effect of the hearsay and adequately takes the place of cross-examination.

We note, too, that as in *Bruton*, the hearsay statement inculpating the petitioner, is clearly inadmissible under traditional rules of evidence. Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946); State v. Watson, 182 Neb. 692, 696, 157 N.W.2d 156, 159 (1968). In State v. Watson, the Nebraska Supreme Court had occasion to say:

"After the arrest and at the police station, Cook and Perez made certain statements concerning their activities with the defendant on the previous day and prior to the arrest on the morning of May 29, 1966. At the trial, over the objection of the defendant, the police officers were allowed to testify as to these statements by Perez and Cook. This was prejudicial error. The general rule is that it is prejudicial error to admit incriminating inculpatory, extrajudicial declarations of a coconspirator made in the absence of or without the knowledge of the accused, after the conspiracy has come to an end through withdrawal or arrest of the participants, or termination of the plan in success or failure, to prove the guilt of one other than the declarants. * * * As the State concedes, it is conclusive that the statements were made after arrest, in the police station, and after the termination of the conspiracy.

"The district court, in two lengthy instructions, after admitting this evidence, submitted the admissibility of it to the jury. This does not save the error. To admit evidence for the purpose of determining its admissibility is self-defeating. Carbo v. United States (1963), 9 Cir., 314 F.2d 718. The State argues that although error, it is nonprejudicial under section 29–2308, R.R.S.1943, being our statute requiring affirmance unless we find that there has been a substantial miscarriage of justice."

The court then went on to hold that it was prejudicial error and that it required a reversal and a new trial in that case. This court notes that the statements made by Cook at the police station were innocuous, and that under Nebraska law the Supreme Court was required to affirm the conviction unless there was a "substantial miscarriage of justice." The federal standard was set forth in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967):

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

This court therefore concludes that on the basis of *Bruton, supra; Douglas, supra;* and *Townsend, supra;* that the petitioner was denied his Sixth Amendment rights under the Confrontation Clause. See also, United States v. Guajardo-Melendez, 401 F.2d 35 (7 Cir. 1968). But see, Santoro v. United States, 402 F.2d 920 (9 Cir. 1968). In addition, on the basis of *Chapman, supra;* and State v. Watson, *supra,* this court does not think that the error was harmless. We do not think that this case comes within the rule announced in United States v. Levinson, 405 F.2d 971, 989 (6 Cir. 1968). This court cannot know for certain whether the jury used the statements of Perez in convicting the petitioner, but such is not the determinative inquiry. *Bruton, supra,* 391 U.S. at pages 136–137, 88 S.Ct. 1620.

It is not now necessary to pass upon the statement made by Perez at the

cruiser car and deemed admissible by the respondent on various exceptions to the hearsay rule (See State v. Watson, *supra*, 182 Neb. at pages 697–698, 157 N.W.2d 156). The United States Supreme Court has not yet passed on the question of whether a recognized exception to the hearsay rule necessarily raises questions under the Confrontation Clause. See *Bruton*, *supra*, 391 U.S. at p. 128, 88 S. Ct. 1620, n. 3. We note only that the petitioner denied hearing the statement made by Perez at the hearing held in this court concerning his application for writ of habeas corpus (Watson may not have heard the remark either). See State v. Watson, *supra*, 182 Neb. at page 697, 157 N.W.2d 156. If he did not hear it he could not protest. In addition, the rule of adoptive admission has run into difficulty. See, e. g., State v. Garcia, 83 N.J. Super. 345, 199 A. 860, 864–866 (1964). The rule may have become impossible in many instances in light of Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Concerning its admissibility as part of the res gestae, we note that Perez was arrested, the officer then went looking for any burglary that might have occurred, he came upon the petitioner, questioned him, and took him to Perez before any statement was made by Perez. In Pointer v. Texas, 380 U.S. 400, 407–408, 85 S.Ct. 1065, 13 L. Ed.2d 923 (1965), the Supreme Court held that "the right of the accused to be confronted with the witnesses against him must be determined by the *same standards* whether the right is denied in a federal or state proceeding. * * *" (Emphasis added) In Krulewitch v. United States, supra, 336 U.S. at page 443–444, 69 S.Ct. at page 718, the Court stated:

> "This prerequisite to admissibility, that hearsay statements by some conspirators to be admissible against others must be made in furtherance of the conspiracy charged, has been scrupulously observed by federal courts."

In Fiswick v. United States, 329 U.S. 211, 217, 67 S.Ct. 224, 227, 91 L.Ed. 196 (1946), the Court spoke of the word "furtherance":

> "While the act of one partner in crime is admissible against the others where it is in furtherance of the criminal undertaking, [Citation omitted] * * all such responsibility is at an end when the conspiracy ends. [Citations omitted] Moreover, confession or admission by one coconspirator after he has been apprehended is not in any sense a furtherance of the criminal enterprise. It is rather a frustration of it."

It is difficult to see how Perez' statement "So they got you, too." is a furtherance of the criminal enterprise. If *Krulewitch* and *Fiswick* accurately set forth the federal standard, it is difficult to see how Perez' statement in question would comport with the decision in *Pointer*.

—4—

*The Question of Waiver.*

The respondent apparently does not seriously contend that the petitioner has waived his right to assert allegations of violations of constitutional rights. He does not make mention of it in his brief. This court is of the opinion that it cannot be seriously asserted that the petitioner has waived his right to present his constitutional claims on his application for a writ of habeas corpus. See, Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963). Of course, because of the disposition of the question concerning the search and seizure of the petitioner's car, the question of waiver for failure to move to suppress prior to trial is moot, but this court specifically finds that the petitioner did not knowingly and intelligently waive his right to object to the statements by Perez when he failed to ask for severance prior to the trial. *Brookhart, supra;* Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

*Disposition of the Petition.*

The court has previously held that the petitioner was denied his right guaranteed by the Confrontation Clause of the Sixth Amendment, and that the error was not harmless. This court thinks that the error taints not only the conviction for burglary, but also, as was the situation in Watson v. State, *supra*, 182 Neb. at page 701, 157 N.W.2d 156, the conviction for the possession of burglary tools. The State of Nebraska should be given the opportunity to re-try the petitioner in a manner which complies with the Constitution of the United States.

It is therefore the order of this Court that the petitioner, Roy E. Cook, be released from his present confinement in the Nebraska Penal and Correctional Complex at the end of ninety days from the date hereof unless within that time he has been retried and convicted in a trial free from constitutional infirmity.