STATE OF NEBRASKA, APPELLEE, v. GEORGE L. WATSON, APPELLANT.

157 N. W. 2d 156

Filed March 8, 1968. No. 36579.

Richard J. Bruckner, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is a criminal prosecution for possession of burglary tools. Following a jury verdict of guilty, defendant was sentenced to 5 years in the Nebraska Penal and Correctional Complex and also sentenced by the court to an additional consecutive term of 6 months for contempt of court. Defendant appeals.

The evidence, direct and circumstantial, and the reasonable inferences to be drawn therefrom, will first be reviewed as far as pertinent to this appeal.

At 5 o'clock, a.m., May 29, 1966, on the Sunday immediately preceding Memorial Day, police officer John Sobeski and his partner were driving in a police cruiser in an easterly direction in the vicinity of Twenty-fourth and Harney Streets in the downtown business section of Omaha, Nebraska. Motor vehicle and pedestrian traffic were very light at this time. Just east of Twenty-fourth and Harney Streets, and at the west end of the block, is a liquor store. North of the liquor store is a parking lot, and east of the store is a driveway. Immediately beyond the driveway is the Omaha Auto Glass building. The police officers, while driving slowly past the Omaha Auto Glass building, noticed two men walking from the east of the building and to the south. They were about 30 feet distant. They observed the two men walk south out to the front end of the Omaha Auto Glass building, then walk west past the building, and turn and walk north again. The defendant was one of the

two men. As the two men turned the corner, both bent down as if pulling something from their clothing. Sobeski saw something in one man's hand, but that man obscured the officer's vision as to the second man. This behavior occurred at the west end of the building. Sobeski parked the cruiser car, and at this time the two suspects were walking quite rapidly to the north. The two men were stopped and searched. The officers found no weapons, but a flashlight was found on the man who had been walking with the defendant. Sobeski then returned to the point where he had seen the two suspects bend over. Here, in a patch of weeds close to the building, the officer found two crowbars and a screwdriver. The tools were lying unrusted in the pushed-over grass, and appeared to have been placed there recently. The defendant and his companion, one Octaviano Perez, were arrested at this point. Sobeski searched the nearby buildings and found no evidence of a burglary. In making this search, Sobeski observed a man sitting in a 1960 Rambler station wagon, reading a newspaper. The station wagon had Missouri license plates. Sobeski asked the man, one Roy Cook, for identification, and observing through the window, he noticed two tools sticking out from the passenger side of the front seat. At Sobeski's request, Cook went with him to the area where the defendant and Perez were being held, and here, Perez said to Cook, "So they got you, too." At this point Cook was also placed under arrest. Sobeski returned to the Rambler station wagon and searched it. He found a pry bar and a screwdriver under the passenger side of the front seat and a 30-inch pry bar under a pillow on the back seat. The first two items had been seen by Sobeski from outside the car, before Cook had been arrested. Further search of the spare tire well and glove compartment revealed a pry bar, a tire iron, two screwdrivers, three pairs of pliers, two punches, and a brake-adjusting spoon.

The defendant and his companion Perez were taken

to the police station. At the police station Perez was interrogated and gave a Missouri address. He stated that he had come to Omaha with Cook and Watson; that he did not commit burglaries himself but that he planned them for other persons; that he considered Omaha an easy place to burglarize; and that he had come to Omaha to decide which places to "hit." Perez had in his possession various gasoline slips dated May 28, 1966, showing charges at stations between Kansas City and Omaha. He had in his possession a key to room 3 of the Eddington Hotel in Omaha, Nebraska, and admitted registering at the hotel on Saturday, May 28, 1966.

Cook was also interrogated and gave, a Kansas address. He stated that he knew Perez and the defendant and that the three had traveled from Overland Park, Kansas, on May 27 and 28 to look for work in Omaha. He described his own activities of the previous day and denied that he had been with Perez and the defendant during most of the evening preceding his arrest.

A great deal of other evidence, was introduced in this trial, chiefly with reference to the burglary of a certain drugstore which was broken and entered into during the evening of May 28, 1966, which offense the defendant in this case was charged with but found not guilty by the jury. Most of this evidence is irrelevant to the issues herein and will not be reviewed herein.

The, first question presented is the sufficiency of the evidence. Participation and criminal intent may be inferred from presence, companionship, and conduct before and after the offense. Miller v. State, 173 Neb. 268, 113 N. W. 2d 118; Callies v. State, 157 Neb. 640, 61 N. W. 2d 370. The evidence clearly establishes that the two men were walking together, and that in stooping and starting to leave the scene of the dropping of the, tools, the two had acted in concert. Clearly a jury could draw a reasonable, if not conclusive, inference that the crowbars and screwdriver, unrusted and lying in the, pushed-over grass, were the same ones that were dropped by

them when drawn from their clothing. Additionally, Perez was in the possession of a flashlight. Besides the direct evidence on this point, it is apparent from their nature that the tools and instruments found were suitable for use as burglary tools. Besides, the nature and purpose of these tools can be inferred from the fact that two men were walking on an early Sunday morning (the day before Memorial Day) and suddenly stopped to throw away two crowbars and a screwdriver while police officers were 30 feet away in a slowly moving police cruiser.

It is the province of the jury to determine the circumstances surrounding, and which shed light upon, the alleged crime; and if, assuming as proved the facts which the evidence tends to establish, they can be accounted for upon no rational theory which does not include the guilt of the accused, the proof cannot, as a matter of law, be said to have failed. Rimpley v. State, 169 Neb. 171, 98 N. W. 2d 868; Morgan v. State, 51 Neb. 672, 71 N. W. 788; Kitts v. State, 153 Neb. 784, 46 N. W. 2d 158; Hoffman v. State, 162 Neb. 806, 77 N. W. 2d 592.

The evidence was amply sufficient to sustain the verdict and there is no merit to this contention.

A more serious question is next presented. After the arrest and at the police station, Cook and Perez made certain statements concerning their activities with the defendant on the previous day and prior to the arrest on the morning of May 29, 1966. At the trial, over the objection of the defendant, the police officers were allowed to testify as to these statements by Perez and Cook. This was prejudicial error. The general rule is that it is prejudicial error to admit incriminating, inculpatory, extrajudicial declarations of a coconspirator made in the absence of or without the knowledge of the accused, after the conspiracy has come to an end through withdrawal or arrest of the participants, or termination of the plan in success or failure, to prove the guilt of one other than the declarants. Zediker v. State, 114 Neb.

292, 207 N. W. 168; Logan v. United States (1891), 144 U. S. 263, 12 S. Ct. 617, 36 L. Ed. 429; Krulewitch v. United States (1949), 336 U. S. 440, 69 S. Ct. 716, 93 L. Ed. 790; State v. Hobbs (1961), 252 Iowa 439, 107 N. W. 2d 242; People v. Olson (1965), 232 Cal. App. 2d 480, 42 Cal. Rptr. 760. An extensive annotation in 4 A. L. R. 3d 678, states the rule as anounced above with seven pages of supporting citations. As the State concedes, it is conclusive that the statements were made after arrest, in the police station, and after the termination of the conspiracy.

The district court, in two lengthy instructions, after admitting this evidence, submitted the admissibility of it to the jury. This does not save the error. To admit evidence for the purpose of determining its admissibilty is self-defeating. Carbo v. United States (1963), 314 F. 2d 718. The State argues that although error, it is nonprejudicial under section 29-2308, R. R. S. 1943, being our statute requiring affirmance unless we find that there has been a substantial miscarriage of justice.

The argument is persuasive that the evidence was nonprejudicial, but the overwhelming weight of authority in jurisdictions where they have a substantially similar prejudicial error statute is to the effect that it constitutes prejudicial error, and we do not feel that we can depart from this holding in this case. It therefore was prejudicial error requiring a reversal and a new trial in this case.

We shall discuss the further questions raised which may reappear on retrial. The defendant and Perez were arrested together. A few minutes later Cook was apprehended nearby in the car and then brought to the area where the defendant and Perez were being held. Here Perez said to Cook, "So they got you, too." Although not citing any authority to support this position, defendant assigns error in the admission of this testimony. As usual, there is no admission or direct evidence that the defendant heard this statement. However, we feel that

the circumstances shown lend themselves to a reasonable inference that it was made in his presence and hearing, and therefore admissible. If Sobeski and Cook heard it, it is reasonably inferable that defendant heard it too. We further feel that this evidence is admissible as res gestae. Collins v. State, 46 Neb. 37, 64 N. W. 432; Sullivan v. State, 58 Neb. 796, 79 N. W. 721. The general rule in this situation is stated in Annotation, 4 A. L. R. 3d 737, as follows: "Statements made by a coconspirator immediately after, or close in time to, the accomplishment of the criminal purpose of the conspiracy, have been held admissible in evidence to characterize the action of the parties as res gestae of the crime charged, even though made out of the presence of the nondeclarant * * * ." The spontaneous nature of the statement is quite apparent.

Defendant objects to the admission of a photograph in evidence which contained items in it which had been previously excluded by the court. These items of evidence, found in the Eddington Hotel on May 31, 1966, the hotel where the defendant stayed, were offered as being material to the charge of the burglary of a drugstore at a different time and place than that involved on the charge herein. The defendant was acquitted on this charge. Therefore, on retrial, it is unnecessary to discuss the merits of this issue.

Defendant argues the inadmissibility of the tools found in the patch of weeds at the scene of the incident and in the Cook car. We will assume, as defendant contends, that this question boils down to a determination of whether the arrest of the defendant was illegal. The arrest was without warrant and therefore must be based upon probable cause which exists from facts and circumstances within the officers' knowledge or of which they had reasonably trustworthy information which was sufficient to warrant a man of reasonable caution in the belief that an offense has been, or is, being committed. State v. O'Kelley, 175 Neb. 798, 124 N. W. 2d 211; Ker

v. California (1963), 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726; Halsey v. Phillips, 104 Neb. 648, 178 N. W. 218.

The evidence establishes that the defendant and another man were walking down the street, stooped, and deposited certain tools in weeds nearby, and then reversed their course of walking. The police officers were cruising slowly in the vicinity. The two suspects were walking rapidly to the north. The men were stopped, and the tools, heretofore described, were observed in the patch of grass close to the building. The brief detention of the two men before the investigation was completed would not be unlawful, even without probable cause for actual arrest. State v. Carpenter, 181 Neb. 639, 150 N. W. 2d 129; State v. Huffman, 181 Neb. 356, 148 N. W. 2d 321.

The crime charged here was the possession of burglary tools. A natural, reasonable inference to be drawn from all of these facts and circumstances is that these tools were intended to be used in the commission of a burglary, that they had been in the possession of the defendant and his companion, and therefore furnished probable cause for the subsequent arrest without warrant for a crime committed in the presence of the arresting officers.

Cook's arrest was legal, and the tools found in the car in which he was sitting were admissible. State v. Carpenter, *supra;* State v. Huffman, *supra.* This case is much stronger than the facts establishing probable cause and a legal arrest in the Carpenter case. In the case here the car was already stopped, and besides a visual observation of the burglary tools in the car, the officers were possessed of the preceding information secured from the observation of Perez and the defendant, and the discovery of the tools in the grass, all occurring a short distance away. The officers' actions were not only reasonable and legal but it appears that they would

have been remiss in their duty if they had not conducted the search and arrested Cook.

As we noted in the Carpenter case, time was of the essence if the officers were to perform their duty in the prevention and discovery of crime. The argument that the officers would be required to get a warrant in this kind of a situation, would "emasculate crime prevention and render peace officers impotent and useless." State, v. Carpenter, *supra*.

The tools found in the possession of Cook were admissible against defendant. The evidence, heretofore reviewed in detail, reasonably establishes that Cook's possession of the burglary tools in the car was a part of a concerted effort and plan or conspiracy and thus the evidence of the possession by Cook is admissible to establish possession by all of the coconspirators. Close, proximity, the time it occurred, and Perez' statement in Watson's presence, "So they got you, too," are particularly significant. Where there is evidence, that several persons participate in a criminal act, the acts and declarations of any one of them, while so participating, are admissible against all of the others. Shepperd v. State, 168 Neb. 464, 96 N. W. 2d 261; Phillips v. State, 157 Neb. 419, 59 N. W. 2d 598, 58 A. L. R. 2d 1141; 22A C. J. S., Criminal Law, § 777, p. 1181.

We have carefully examined the other assignments of error with reference to the trial for the possession of burglary tools, and they are either without merit or unnecessary to discuss in the light of the granting of a new trial in this case.

Defendant attacks his 6-month sentence for contempt of court. We will not repeat the evidence in this respect. Suffice it to say that the defendant by a series of repetitive obscenities, in and out of the presence, of the jury, assaulted the able trial judge's character, his mother, his religion, and his professional ability and behavior. The trial court exhibited and maintained a remarkable restraint in this situation during the course

of the trial. The defendant now takes the absurd and untenable position that the defendant having committed such acts, the trial judge should have disqualified himself and ordered a mistrial. To hold that such conduct requires disqualification would permit a defendant to control a criminal trial himself and effectively destroy the orderly processes of justice. The separate sentence for 6 months for contempt of court was amply warranted by the evidence and is affirmed.

The judgment and sentence of the court for contempt is affirmed, and the judgment and sentence of the court on the charge of possession of burglary tools is reversed and the cause remanded for new trial.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.