LELAND K. KOVARIK, APPELLEE, v. COUNTY OF BANNER, APPELLANT.

224 N. W. 2d 761

Filed January 2, 1975. No. 39469.

Robert G. Simmons, Jr., for appellant.

Leland K. Kovarik, pro se.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This case involves the right of the plaintiff, an attorney, to recover attorney's fees and expenses from County of Banner, Nebraska, arising from his activities as appointed defense counsel for an indigent defendant charged with the commission of misdemeanors to which he subsequently entered a plea of guilty. Plaintiff thereafter filed a claim for his services and expenses with the county board, and upon the disallowance thereof, appealed to District Court. The District Court ruled against the county and entered judgment in favor of the plaintiff. We affirm.

The plaintiff herein, Leland Kovarik, was appointed by the county court of Banner County to represent the indigent defendant on the aforementioned charges. Upon the conclusion of the criminal proceedings, it was

determined by the county court that the plaintiff was entitled to attorney's fees and expenses in the amount of $121.63. The plaintiff thereupon filed a claim for that amount with the county board of Banner County, but the claim was disallowed by the board. Pursuant to section 23-135, R. R. S. 1943, the plaintiff appealed the denial of his claim to the District Court. The county answered the plaintiff's petition on appeal, asserting: (1) That the county court was without power to appoint counsel for indigent misdemeanor defendants; (2) that there is no statutory authority purporting to impose obligation upon the county to pay the fees and expenses of appointed counsel for indigent misdemeanor defendants; and (3) that to require the county to pay the fees and expenses of appointed counsel for indigent misdemeanor defendants is in violation of Article VIII, section 1A, of the Constitution of Nebraska. The District Court ruled on each of these points against the county, and entered a judgment in favor of the plaintiff for $121.63. Motion for new trial, filed by the county, was overruled and the county now brings appeal to this court.

At the outset, we concede there is no express statutory authority in this state for the appointment of counsel to represent indigent misdemeanor defendants, although there is provision made in our statutes for the appointment of counsel to represent felony defendants in counties not having public defenders. § 29-1804.06, R. S. Supp., 1972. However, we believe that the courts of this state have the inherent power to do those things reasonably necessary for the administration of justice in the exercise of their jurisdiction, and that when we are concerned with a matter so fundamental as the indigent's right to appointed counsel in criminal matters, no express provision granting such authority is required. This is particularly true in light of recent pronouncements of the Supreme Court of the United States with reference to the right of a criminal defendant to be rep-

resented by counsel. In 1963 the Supreme Court in the landmark case of Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, in interpreting the Sixth Amendment to the Constitution of the United States providing "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense," held that the refusal of a state trial court to appoint counsel for one prosecuted for a felony violated the Sixth Amendment's guarantee of counsel made obligatory upon the states by the Fourteenth Amendment to the Constitution of the United States. In so doing it overruled the earlier case of Betts v. Brady, 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595, holding that the appointment of counsel was not necessary in all cases. The ruling in Gideon v. Wainwright, *supra*, was by its terms applicable only to felony defendants, and was not construed as applicable to misdemeanor and petty offense defendants until 1972, when the Supreme Court decided the case of Argersinger v. Hamlin, 407 U. S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530. In that case the court enunciated the rule that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial. Since Argersinger v. Hamlin, *supra*, it is generally recognized and conceded that the appointment of counsel to represent an indigent defendant, even in misdemeanor and petty offense cases, is mandatory under the Constitution of the United States where imprisonment is imposed, although there is a suggestion in that case of an exception when the judge knows before the trial of a misdemeanor that no imprisonment may be imposed, even though local law permits it.

As was indicated by the order of the District Court in this case, it was in observation and compliance with the requirements of the law, as set out in cases decided by the Supreme Court of the United States, that the plain-

tiff herein was appointed to serve as defense counsel to represent the indigent misdemeanant involved in this case. The administration of justice required that it be done; and although the county court had no statutory authority to make such appointment, we believe that it had the inherent power to make such an appointment. See, Knox County Council v. State ex rel. McCormick, 217 Ind. 493, 29 N. E. 2d 405 (1940); State ex rel. Gentry v. Becker, 351 Mo. 769, 174 S. W. 2d 181 (1943); 20 Am. Jur. 2d, Courts, § 79, p. 440.

The more important question to be determined is who, if anyone, is liable to the plaintiff herein for payment for his services. It may be stated as a general rule that it is the duty of a county to pay the expenses of the local administration of justice within the county, and it has been said that this duty may arise as well from the general system of county organization as from express statutes defining the duties of counties on this particular subject. 20 C. J. S., Counties, § 210, p. 1058. We concede that authorities differ respecting the liability of a county, in the absence of an express statutory provision therefore, for the fees and expenses of attorneys appointed to defend a poor person. 20 C. J. S., Counties, § 213 (b) 2, p. 1065; 7 C. J. S., Attorney and Client, § 172a, p. 1033; 36 L. R. A. N. S. 277; Annotation, 21 A. L. R. 3d 819. We have reviewed the cases and authorities and have concluded that the better rule is that the burden must rest with the county.

The county makes much of the language in the Gideon and Betts cases that "one charged with crime, who is unable to obtain counsel, must be furnished counsel by the state," and argues from this language that the Supreme Court has clearly ruled that the providing of counsel for indigent defendants is a state function, and therefore the counties have no duty or obligation to pay for such counsel in that regard. We do not so construe that language, and believe it is clear that the Supreme Court was merely differentiating between the sovereignty of

the United States and the sovereignty of the states. Although the state may have the primary obligation of administering justice and of establishing the various courts for that purpose, such obligation would in no way restrict the power of the state from delegating that responsibility and expense to other political subdivisions therein, such as counties. As will be hereinafter demonstrated, the fact is that the State of Nebraska has in fact done that on many occasions.

In State v. Rush, 46 N. J. 399, 217 A. 2d 441, 21 A. L. R. 3d 804 (1966), the court stated: "In this connection we merely note, without exploring the subject at all, the question whether the judiciary has the inherent power to order payment in the absence of statute. See, 14 Am. Jur., Courts, § 171, p. 371; 20 Am. Jur. 2d, Courts, § 79, p. 440; Leahey v. Farrell, 362 Pa. 52, 66 A. 2d 577 (Sup. Ct. 1949). We need not explore that matter since we find ample evidence of a legislative will that the cost of criminal prosecutions shall be paid by county government and there is no reason to say the costs we are now considering are of another nature.

"That the county must meet the costs of criminal prosecutions is clear. The county is a subdivision of the State, constituted to perform certain functions of State government, Bergen County v. Port of New York Authority, 32 N. J. 303, 312 (1960), and among them is the prosecution of criminal causes. It is generally held that the county is liable for the expenses involved, either by virtue of express statutory provision or by necessary implication from the statutory scheme. 20 C. J. S. Counties § 210, pp. 1058-59; cf. Godfrey v. McGann, 27 N. J. 28 (1962)."

In Luke v. County of Los Angeles, 269 Cal. App. 2d 495, 74 Cal. Rptr. 771 (1969), the court stated: "No longer will it serve for a court to select a lawyer-by-stander in the courtroom, since with the best of professional intentions the latter may only be qualified to furnish perfunctory and transitory representation, per-

haps in a field of law in which he has little personal interest or current familiarity. * * * We think the days are past when a lawyer could be expected to do this solely as a public service. If society is to demand representation by counsel in an expanding variety of proceedings and to insist on a high level of competency in the performance of such representation, then counsel should be paid. Is it reasonable today to attach to a statute which provides for court-appointed counsel in a custodial proceeding an interpretation that appointed counsel will render his services for nothing?

"We think not. The similarity of civil custodial proceedings to criminal proceedings and the comparable need of the subject for effective representation in both instances makes us reject the proposition that the Legislature intended to provide court-appointed counsel in two types of proceedings but compensate counsel at public expense in only one. We think the better reasoning infers that the Legislature intended court-appointed counsel to be compensated in all custodial proceedings of a serious nature, including narcotic commitment proceedings."

In this case we believe that plaintiff in defending the indigent conferred through his services a benefit upon the public, and that in accordance with the general rule that when one party renders services that are of benefit to another there is an implied obligation on the part of the recipient to pay the reasonable value of the services rendered. The cost involved is not a burden which should be made to rest unequally upon the individual, merely because he is an attorney. We conclude therefore that where a county court appoints an attorney to represent an indigent charged with a crime, that appointment carries with it an implied promise that such attorney will be paid for his services by the public. County of Dane v. Smith, 13 Wis. 654 (1861). See, also, cases cited in 21 A. L. R. 3d 819, 832. Furthermore, since the proceedings that compel such an

appointment are commonly instituted by a *county* official (§ 23-1201, R. R. S. 1943), in order to prosecute for a crime committed within the *county* (§ 29-1301, R. R. S. 1943), we believe it is quite proper that the obligation to pay for the services rendered by appointed counsel fall particularly upon the county. We hold, therefore, that where a county court appoints defense counsel to represent an indigent charged with any offense for which he may be imprisoned, such an appointment carries with it an obligation on the part of the county to pay the attorney so appointed reasonable attorney's fees and expenses for his services pursuant to that appointment.

We find the county's contention regarding the unconstitutionality of the imposition of such an obligation upon the county to be interesting, but without merit. Basically, the county asserts that to require the counties to pay the attorney's fees and expenses of court-appointed counsel is in violation of Article VIII, section 1A, of the Constitution of Nebraska, which provides: "The state shall be prohibited from levying a property tax for state purposes." Thus, the county argues that the providing of defense counsel for indigents is a state purpose for which county funds, supplied through property taxation, may not be expended. We do not agree.

This court has commented before upon the conceptual difficulty of separating "state purposes" from "local purposes." See Craig v. Board of Equalization, 183 Neb. 779, 164 N. W. 2d 445 (1969). It would seem to us that in many, if not most, cases a governmental function may be accurately described as having both state and local purposes. It is with this sort of problem in mind that this court has held that where state and local purposes are commingled in a governmental function, the crucial issue in regard to Article VIII, section 1A, Constitution, turns upon a determination of whether the controlling and predominant purposes are state purposes or local purposes. State ex rel. Western Nebraska Tech-

nical Com. Col. Area v. Tallon, *ante* p. 201, 219 N. W. 2d 454 (1974). We also note in passing that under the facts of the foregoing case the state required the county to levy a property tax to support the technical college, which is not true in the instant case. We properly held under the facts of that case that a "state purpose" rather than a "local purpose" was involved. We also wish to point out that counties are not supported solely by property taxes. There are other sources of revenue available to the counties other than property taxes, such, for example, as inheritance taxes. In fact, it is clear from a reading of sections 77-2032 and 77-2033, R. R. S. 1943, that inheritance taxes may be credited by the county board to the county general fund, to be used "for the relief of worthy, incapacitated or *indigent* persons * * *." (Emphasis supplied.) There is no requirement whatsoever that any county levy a property tax to pay the fees for appointed counsel.

We believe that in spite of the fact a criminal prosecution is required by statute to be brought in the name of the state, the actual prosecution of criminal charges has been delegated by the state to the counties. It is true, of course, that countless people, not only in the county, but also in the state and country, and perhaps in the entire world, may benefit from the just prosecution of the criminal accused. However, the mere chance that the collective benefits may be universal does not alter the fact there is a definite and substantial benefit accruing to the counties, and the procedures for criminal prosecutions have been established by law at the county level. By virtue of our laws of venue, the prosecution is taken to vindicate, as it were, a crime occurring within the county. See § 29-1301, R. R. S. 1943. It is perhaps for that reason that historically and traditionally the counties have been given the responsibility of paying for the expenses of criminal prosecution. In adopting the Duis amendment to Article VIII, section 1A, Constitution, there is no reason to be-

lieve the people intended to disturb the historical method of financing criminal prosecutions. For example, under section 29-2709, R. R. S. 1943, the counties are obligated to pay "any cost bills that are not collectible in cases of misdemeanor, peace warrant and juvenile causes." The cost of keeping and maintaining prisoners prior to conviction has been charged to the counties pursuant to sections 29-1001 and 29-1004, R. R. S. 1943, and the counties are obligated, under section 29-1005, R. R. S. 1943, to pay such costs. It is a county officer, namely the county attorney, who has the duty, under section 23-1201, R. R. S. 1943, to prosecute criminal charges. Even where there is a change of venue, it is the duty, under section 23-1201, R. R. S. 1943, of the county attorney of the county where the crime was committed to carry out prosecution, and he is empowered, under section 33-108, R. R. S. 1943, to charge the county for his reasonable traveling and hotel expenses, in addition to his regular salary, while so engaged. Furthermore, when there is a change of venue the county where the crime was committed is responsible to pay "all costs, fees, charges and expenses made or incurred in the trial of, or in keeping, guarding and maintaining the accused," under section 29-1302, R. R. S. 1943.

If we were to agree with the county and hold that it is unconstitutional to charge the counties for the expenses of appointed defense counsel, then logically we would call into question the constitutionality of all these other statutes which charge to the counties the expenses of criminal prosecutions. We cannot be drawn into such an absurd result. The statutory scheme, outlined above, is clearly indicative of the fact that criminal prosecution has always been regarded as being primarily a function of the counties. We must conclude, therefore, that the court appointment of defense counsel for an indigent charged with crime has a purpose which is predominantly local in nature and that it is not in violation of Article VIII, section 1A, of the Constitution

of Nebraska, to require the counties to pay the reasonable attorney's fees and expenses of an attorney appointed to defend an indigent charged with crime.

All contentions of the county having been determined against it, the judgment of the District Court must be and is affirmed.

AFFIRMED.

CLINTON, J., concurs in result.