In re Interest of Simon H., a child under 18 years of age.
State of Nebraska, appellee, v. Wayne H. and Marcel H.,
appellees, and Nebraska Department of Health and
Human Services, appellant.

590 N.W.2d 421

Filed March 16, 1999.   No. A-98-678.

Don Stenberg, Attorney General, Royce N. Harper, and Michael J. Rumbaugh for appellant.

No appearance for appellees.

Irwin, Chief Judge, and Hannon and Sievers, Judges.

Hannon, Judge.

The Nebraska Department of Health and Human Services (Department) appeals from the order of the juvenile court for Seward County ordering the Department to pay $1,000 on or before July 27, 1998, for contempt of court after filing a case plan and court report 1 day late. The Department claims the juvenile court erred in many respects. We conclude that the pro-

ceedings of the juvenile court were so procedurally deficient that the order was erroneous and void. Accordingly, we reverse, and remand with directions to vacate the order.

On January 21, 1998, the State filed a petition in the juvenile court for Seward County alleging that Simon H. was a juvenile as described in Neb. Rev. Stat. § 43-247(3)(a) (Supp. 1997). The adjudication hearing was held on May 14, and the child was so adjudicated. The validity of that adjudication is not questioned, but the evidence shows that the adjudication was based upon the parents', who have separate homes, fighting in the presence of the child and thereby endangering him. After the judge adjudicated the child, he requested that a representative of the Department come into the courtroom to hear the order. Among other things, the judge stated that he was going to place custody of the child with the Department and "I'm ordering the Department to prepare a case plan and court report. They are to examine both parents' facilities." He further stated he was not making a determination on the child's custody until he received a report from the Department. The judge then stated, "I allow usually about 45 days, is that enough to get this done?" The Department representative responded in the affirmative. There was then a colloquy as to an agreeable time for the dispositional hearing which was ultimately scheduled for June 22. The judge then asked the Department's representative if the report could be prepared early enough so that "any party that wants to object to it can do so, so that we can have an evidentiary hearing if there's an objection to the case plan?" The representative again responded in the affirmative. The judge remarked that the Department had "promised" that the case plan would be prepared prior to the hearing scheduled for June 22. The adjudication hearing was adjourned, and a journal entry was signed and filed by the court on May 14, which purported to record the activity of May 14. The journal entry was prepared on a form which is intended to show significant information by checkmarks, by completion of blanks before the indicated information, and by writing words in prepared blank spaces. The form shows an adjudication under § 43-247(3)(a) "as to both parents." The form contains a checkmark in front of the line stating "Predispositional Investigation by Social Services." Immedi-

ately following on the same line are the handwritten words "home study both parents." This portion of the journal could only be interpreted to mean the court was ordering "Social Services" to do a predispositional investigation and home study of both parents' homes.

The bill of exceptions shows that on June 22, 1998, the court convened with Stephanie Stromp and Shirl Cadek, caseworkers for the Department, as well as with the parties and their attorneys. There is a checkmark indicating that the county attorney or deputy county attorney was present, but "special prosecutor" is written in longhand under this space. We presume this indicates that the special prosecutor was representing the county attorney. The bill of exceptions shows Kevin Oursland, special Seward County prosecutor, appearing as counsel for the State and Gregory Damman appearing as counsel for "CASA." Documents introduced without objection were a memorandum from Mervyn L. McDonough, "CASA/GAL"; a 5-page "approval study" concerning the child's mother, Marcel H., that had been prepared by Stromp; and a similar study concerning the home of the child's father, Wayne, that had been prepared by Cadek.

The judge then asked if there was a case plan and court report. The special prosecutor answered no, and the judge asked him where those documents were. Before the attorney answered, the judge announced a recess with the announced purpose of listening to the recording of the May 14, 1998, hearing to determine what he had actually ordered at that hearing. The judge then stated that if he "did order it, somebody is going to be in contempt today and maybe go to jail." Shortly thereafter, the judge had the tape recording played for the courtroom. The judge indicated some confusion in interpreting the oral record, because he said, "The Court asked if 45 days was enough, in fact, time — we gave them extra time because Mr. Alexander could not be here on the date that the Court was looking at 45 days down the way." The judge announced:

> The Department has failed to file a case plan and court report as ordered by this Court. They are now in contempt of Court. I doubt if I have the right social worker to look at incarceration on, so I'm going to order, as part of the contempt or that the Department is in contempt of Court,

and they are hereby fined the maximum amount I'm allowed to fine under criminal fines of $1000 per day . . . . The judge also stated, "It's beyond this judge as to why there isn't a case plan and court report, unless somebody just dropped the ball or somebody is playing games with the Court." The court then scheduled the next hearing for June 27 at 3 p.m.

The hearing of June 22, 1998, was partially memorialized with the usual checks and filling in of blanks on a form with a heading indicating it was to be used to record a dispositional hearing in a juvenile proceeding. Most of the entries on this document are irrelevant to the inquiry herein, but one entry shows the appearance of "HHS - S.Stromp." The form records that the dispositional hearing is continued to July 27 at 3 p.m. The form contains a handwritten statement that "HHS found in contempt of court and fined $1000 per day till plan submitted to court." The form also states, "If case plan completed prior — contempt purged & fine ceases on day plan filed." This order was filed June 22.

In a separate order of contempt signed and dated June 22, 1998, the court noted that it had previously "ordered a case plan and court report to include home studies of both parents' homes. The record indicates that a [Department] worker was present in the courtroom and answered in the affirmative that 45 days was adequate to prepare the reports." The court then found the Department "has failed to file the report as ordered [and] is held in contempt . . . . They are ordered to pay $1000.00 per day for each day that the case plan is not on file with the court."

The record also contains an order dated June 23, 1998, in which the juvenile court found that the Department "has purged itself of contempt as of June 23, 1998," and stated the Department "shall pay the Seward County Court the sum of $1000.00. Said amount to be paid in full on or before July 27, 1998."

The Department filed a notice of appeal regarding both the June 22 and 23, 1998, orders.

## ASSIGNMENTS OF ERROR

The Department alleges the juvenile court erred (1) in holding the Department in contempt; (2) in combining elements of criminal and civil contempt, as well as elements of direct and

indirect contempt; (3) in failing to conduct a show cause hearing prior to the entry of the finding of contempt thereby denying the Department due process of law; and (4) in imposing a sanction on the Department in the form of a $1,000 fine.

## STANDARD OF REVIEW

The questions presented by this appeal are all questions of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *In re Interest of Krystal P. et al.*, 251 Neb. 320, 557 N.W.2d 26 (1996).

## DISCUSSION

A contempt order imposing a civil or coercive sanction is not a final, appealable order. *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991); *Jessen v. Jessen*, 5 Neb. App. 914, 567 N.W.2d 612 (1997). An unconditional judgment to pay a fine for the violation of a court order is an appealable order. *Dunning v. Tallman*, 244 Neb. 1, 504 N.W.2d 85 (1993). The order of June 22, 1998, insofar as it orders the Department to pay $1,000 for each day that the case plan is not on file, is not an appealable order if it was interpreted as an order to allow the Department to avoid the fine if it complied with that order. However, as interpreted by the judge who entered it, the Department could not have avoided the penalty by compliance and therefore the order of June 22 is appealable, notwithstanding the fact that the Department complied with that order by filing a case plan.

The Department contests the validity of the orders on several grounds. We deem it sufficient to consider only these arguments: (1) The Department did not violate the terms of the May 14, 1998, order, because that order did not specifically provide or order a case plan and court report to be prepared before the June 22 hearing; (2) Neb. Rev. Stat. § 25-2122 (Reissue 1995) requires that the Department be notified of the accusation and have a reasonable time to make a defense; (3) the Department's conduct could not be considered direct criminal contempt justifying summary action; and (4) there is no showing that the Department was in willful contempt.

*Order Allegedly Violated.*

As filed with the court, the order of May 14, 1998, provides that the court orders "[p]redispositional [i]nvestigation by Social Services — home study both parents." The order later states the disposition was set for June 22 at 1 p.m. We note that home studies of both parents' homes were introduced in evidence at the commencement of the June 22 hearing. By its terms, the May 14 order does not order a "case plan and court report." We assume that the case plan is that which the juvenile court may order of the Department when a juvenile is adjudicated to be one as defined in § 43-247(3), as provided in subdivision (2) of Neb. Rev. Stat. § 43-285 (Cum. Supp. 1996). We assume the court report is the report to be filed within 30 days of the order awarding custody of the juvenile which states the location of the juvenile's placement and his or her needs required by subdivision (3) of § 43-285.

The real issue is the effect of oral communications between the judge and the representative of the Department at the May 14, 1998, hearing. At that hearing, the judge requested a representative from the Department to come into the courtroom. The judge stated, "I'm ordering the Department to prepare a case plan and court report." He stated he was not going to make a decision on which parent the child should be placed with "until I get a report from the Department." The judge stated that he usually allows 45 days for such reports to be prepared. He then set the hearing for June 22, and asked the Department representative if the plan could be completed soon enough so the parties could get it "early." In effect, the judge asked the representative if the Department could comply with his request, and the representative replied, "Sure." The judge stated, "Thank you, that's — H.H.S. promised that." The judge then turned to other unrelated matters, and the proceedings were adjourned shortly thereafter.

■ The above-mentioned record shows that the judge probably intended to order the Department to prepare a case plan and court report and that some unnamed representative of the Department promised to submit the documents before the hearing. The Department's position is that in the written order the judge signed, he did not order the case plan and court report, but

only an investigation and home study. The prevailing system in the courts of this state clearly contemplates that court orders be in writing, containing the relief granted or the order made. See, Neb. Rev. Stat. §§ 25-1301, 25-1318, and 25-2729(3) (Reissue 1995); *In re Interest of J.A.,* 244 Neb. 919, 510 N.W.2d 68 (1994).

We observe that we are not considering an oral order a judge might make in the course of a proceeding, but, rather, an order as part of an adjudication which is a final, appealable order. An adjudication under § 43-247 of the Nebraska Juvenile Code is an appealable order. *In re Interest of V.T. and L.T.,* 220 Neb. 256, 369 N.W.2d 94 (1985); *In re Interest of Aufenkamp,* 214 Neb. 297, 333 N.W.2d 681 (1983). What a final court order means as a matter of law is determined from the four corners of the order. See, *Metropolitan Life Ins. Co. v. Beaty,* 242 Neb. 169, 493 N.W.2d 627 (1993); *Neujahr v. Neujahr,* 223 Neb. 722, 393 N.W.2d 47 (1986). The order of May 14, 1998, was clearly a final order, and the judge's act of reviewing the earlier recorded conversation to discern what he ordered is clearly error. In short, the conversation was not an order. On the issue of whether the Department violated the court's order, we look to the written order of May 14, not to the conversation between the judge and an unnamed representative of the Department. By its terms, the order of May 14 did not order the Department to prepare a case plan and court report before June 22, and therefore, the Department could not violate that order by failing to do so.

*Necessary Procedure and Showing.*

We shall consider the last three arguments of the Department together. In doing so, we shall assume that the juvenile court made a valid order which the Department would have violated by failing to produce a case plan and court report on June 22, 1998.

Section 25-2122 provides that "[c]ontempts committed in the presence of the court may be punished summarily; in other cases the party upon being brought before the court, shall be notified of the accusation against him, and have a reasonable time to make his defense."

In *Muffly v. State,* 129 Neb. 334, 261 N.W. 560 (1935), the trial court found an attorney in contempt and fined him $25

without notice to the attorney for failing to appear and for filing a withdrawal without notice or leave of court. The *Muffly* court held the assessment was erroneous and void on its face. Similarly, in the case at hand, the Department had no notice of the judge's intent to assess a fine. No one appeared for the Department except caseworkers, who would obviously have no authority to represent the Department on a contempt charge.

Section 25-2122 does allow summary punishment of contempts committed in the presence of the court. In one respect, the failure to file or present the case plan and court report as ordered would be in the presence of the court in much the same way as the failure of an attorney to appear for a court proceeding that was clearly ordered by the court. In *In re Contempt of Potter*, 207 Neb. 769, 301 N.W.2d 560 (1981), the Supreme Court said that the failure of the attorney to appear as ordered was a hybrid situation because the judge would have personal knowledge of the records of the court showing that an order requiring the attorney to appear had been entered, that the attorney knew of the order, and that the attorney did not appear as ordered. In *In re Contempt of Potter*, the trial court gave the attorney notice by way of an order to show cause and an opportunity to appear at an ordered hearing to explain why he did not appear for the missed hearing. The attorney appeared with counsel, and after a hearing, the trial court found him in contempt. In *In re Contempt of Potter*, the finding of contempt was affirmed on appeal.

■ In the instant case, it takes little thought to come up with many reasons why the case plan and court report might not have been prepared on time. Only the willful failure to produce the documents would be contemptuous. Since the Department, and not the individuals, was charged with contempt, the question of whose willful failure would make that part of the executive branch in contempt is a difficult question. For instance, we do not consider the power of the court to hold a department of state government in contempt. We need not speculate on the reasons that might justify the failure of the Department to prepare the case plan and report on time. It seems basic that whenever a court must determine an uncertain point of law or fact before entering an order, the party affected by the order is entitled to

reasonable notice and an opportunity to be heard. We therefore determine that the order of June 23, 1998, is void for lack of such notice and opportunity to be heard.

In the Department's brief, it makes several other points to support its position that issuing the order was error. However, the Department was not given an opportunity for a hearing in the lower court and, therefore, was not given an opportunity to make a record. In this court, no party appears as an appellee. With only one side appearing in this court, the issues are not likely to be properly framed or argued. In any event, the resolution of these additional issues is not necessary to resolve this case.

We therefore reverse the orders of June 22 and 23, 1998, and direct the juvenile court to vacate them.

REVERSED AND REMANDED WITH DIRECTIONS.