BILLY ROY TYLER, APPELLANT, V.
CALVIN HEYWOOD ET AL., APPELLEES.

598 N.W. 2d 73

Filed July 27, 1999.   No. A-97-1301.

Billy Roy Tyler, pro se.

Don Stenberg, Attorney General, and Linda L. Willard for appellees.

IRWIN, Chief Judge, and HANNON and SIEVERS, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Billy Roy Tyler appeals from the district court's dismissal of his action against Calvin Heywood, Robert Madsen, Harold Clark, E. Benjamin Nelson, Frank Hopkins, Raymond Edelman, Don Stenberg, and the Nebraska Department of Corrections (defendants). On appeal, Tyler asserts the court erred in dismissing the case. Because we conclude that the court erroneously dismissed the case, we reverse, and remand.

## II. BACKGROUND

On September 17, 1997, Tyler filed a petition captioned "Civil Action and Praecipe." In the petition, Tyler asserted that he has been held continuously in solitary confinement "for 400 days or so" and has received disciplinary segregation of "almost 1,000 days . . . in the 'hole.'" Tyler prayed for a declaration that his legal and constitutional rights had been violated by the allegedly excessive solitary confinement, an injunction against further violations of his rights, an order removing him from disciplinary segregation, "$50,000,000 punitive and compensatory damages," and whatever other relief deemed appropriate by the court.

On November 13, 1997, the defendants filed a motion to make more definite and certain. In the motion, the defendants asserted that the petition was "so vague and ambiguous that they cannot reasonably frame a responsive pleading." They prayed for an order requiring a more definite statement of Tyler's claim

against the defendants, specifically setting forth the cause of action being brought against each individual defendant.

On November 25, 1997, a telephonic conference call was conducted as a hearing on the defendants' motion. The defendants' attorney argued the substance of the motion to make more definite and certain, and asked the court for relief. The following colloquy then occurred:

THE COURT: All right. Mr. Tyler.

PETITIONER TYLER: She can tell from reading the lawsuit. If you read it — Have you read it?

THE COURT: Yes, sir, I have.

PETITIONER TYLER: Can you tell what I'm talking about?

THE COURT: That's the issue we're going to decide.

PETITIONER TYLER: I'm asking you, you're the judge. Are you able to ascertain what it is or is it so vague you just don't have a clue?

THE COURT: Do you have an argument to be made, Mr. Tyler?

PETITIONER TYLER: No. Fuck you, mother fucker.

THE COURT: Mr. Tyler, you're in contempt of court.

PETITIONER TYLER: Fuck you, mother fucker, —

THE COURT: This hearing is at a conclusion.

PETITIONER TYLER: — fuck you —

The above exchange constitutes the end of the recorded hearing. After the hearing had been concluded, the court entered minutes indicating that "[b]ased on plaintiff's contemptuous conduct during this hearing, this case is dismissed." Tyler timely appeals to this court.

### III. ASSIGNMENT OF ERROR

On appeal, Tyler has asserted that the district court "erred in denying Relator Plenary Review and erred in dismissing Appellant's case upon demurrer."

### IV. ANALYSIS

Although Tyler characterizes the court's dismissal as a dismissal "upon demurrer," our review of the record does not reveal any demurrer ever filed, argued, or ruled upon. On the contrary,

it appears that the court dismissed this action upon the court's own motion. The only motion pending before the court, according to the transcript, was a motion to make more definite and certain. As such, we are presented with the question of whether the court properly dismissed this case on the court's own motion.

### 1. PROPOSITIONS OF LAW: CONTEMPT

■ Neb. Rev. Stat. § 25-2121 (Reissue 1995) expresses that "[e]very court of record shall have power to punish by fine and imprisonment, or by either," persons who commit contemptuous acts. It has long been recognized, and is beyond dispute, that the statute is a codification of the common law of contempt and does not supplant a court's inherent contempt powers. *In re Interest of Krystal P. et al.*, 251 Neb. 320, 557 N.W.2d 26 (1996); *In re Contempt of Potter*, 207 Neb. 769, 301 N.W.2d 560 (1981); *Paasch v. Brown*, 199 Neb. 683, 260 N.W.2d 612 (1977); *Kasparek v. May*, 174 Neb. 732, 119 N.W.2d 512 (1963). See, also, *Hawes v. State*, 46 Neb. 149, 64 N.W. 699 (1895) (citing precursor to § 25-2121 and holding it to be declaratory of common law).

■ The Nebraska Supreme Court, as well as the Legislature, has drawn a distinction between direct contempt and constructive contempt. The distinction between the two is that the actions which constitute direct contempt occur in the presence of the court so that the court has personal knowledge of the facts and has no need to inform itself of them by using witnesses or other evidence. *In re Contempt of Potter, supra*. The actions which constitute constructive, or indirect, contempt occur outside the presence of the court, and the court must inform itself of the facts through the use of witnesses or other evidence. *Id.* Direct contempt may be punished summarily, whereas in cases of constructive contempt, the court must bring the accused party before the court, notify the party of the accusation against him, and allow him a reasonable time to make his defense. See *id.* See, also, Neb. Rev. Stat. § 25-2122 (Reissue 1995); *In re Application of Niklaus, Niklaus v. Holloway*, 144 Neb. 503, 13 N.W.2d 655 (1944); *In re Interest of Simon H.*, 8 Neb. App. 225, 590 N.W.2d 421 (1999).

■ An additional distinction in contempt proceedings exists concerning the type of sanction imposed, coercive or punitive. Coercive sanctions are those which aim to compel future obedience to the court's orders and decrees, and punitive sanctions are those which punish past disrespectful or contumacious conduct, vindicating the court's authority. *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984). When a coercive sanction is imposed, it has been said that the party being sanctioned holds the proverbial keys to his jail cell because the sentence is conditioned upon his continued noncompliance with the court's order. *Id.*; *Hammond v. Hammond*, 3 Neb. App. 536, 529 N.W.2d 542 (1995). When a punitive sanction is imposed, the sanction is much more like a criminal sentence, because it is not subject to mitigation if the sanctioned party complies with the court's order. *In re Contempt of Liles, supra*; *Hammond v. Hammond, supra*. A punitive contempt sanction is a final, appealable order. *Hammond v. Hammond, supra*. Additionally, it has been held that contempt proceedings are in their nature criminal, that no presumptions will be indulged in to support a conviction for contempt, and that contempt proceedings are governed by the strict rules of construction applicable to criminal prosecutions. See, e.g., *Paasch v. Brown, supra*; *Thomas v. Thomas*, 132 Neb. 827, 273 N.W. 483 (1937); *Wright v. Wright*, 132 Neb. 619, 272 N.W. 568 (1937); *Hawes v. State*, 46 Neb. 149, 64 N.W. 699 (1895).

In the present case, it is beyond dispute that Tyler's actions and profanities directed at the court during the hearing constituted direct contempt. The sanction imposed was ordered as a punishment for that contemptuous action and was a punitive sanction. The issue before us is whether or not dismissal of a litigant's petition is a permissible punitive sanction for direct contempt.

## 2. DENIAL OF PRIVILEGES

Our research has revealed a lack of authority in this jurisdiction on the question of whether a district court can deny a plaintiff the privilege of proceeding with a cause of action as a summarily imposed sanction for contempt. The closest case that we can find to reaching this issue is *Winter v. Doane*, 210 Neb. 499,

315 N.W.2d 262 (1982). In *Winter v. Doane*, the Supreme Court affirmed a finding of contempt and the dismissal of a cross-petition. We note that the opinion was a per curiam opinion signed by only five judges, two of whom were district court judges sitting with the Supreme Court on that particular case. There is no analysis to explain the holding, nor is there any further authority offered on the issue. We are unable to tell if the sanction was imposed summarily or after notice and a hearing, and we are unable to tell if the sanction was imposed as a coercive or punitive sanction. In short, we cannot determine the basis for the holding, or how to apply it to other circumstances.

In *In re Interest of Krystal P. et al.*, 251 Neb. 320, 557 N.W.2d 26 (1996), the Supreme Court directly addressed, and discussed, the issue of whether the district court could impose a sanction beyond a fine or imprisonment as a sanction for contempt. In *In re Interest of Krystal P. et al.*, the Supreme Court was specifically concerned with whether an award of attorney fees could be a proper sanction for contempt. The Supreme Court first recognized that the statutory section outlining a court of record's authority to impose a fine or imprisonment as a sanction for contempt is not meant to supplant the court's inherent powers concerning contempt. The Supreme Court then analyzed the issue of imposing attorney fees as a sanction under the same rules applicable to imposing attorney fees outside the context of contempt actions. The Supreme Court concluded that there was a uniform course of practice in this jurisdiction of using attorney fees as a sanction for contempt, and affirmed the district court's use of such fees as a sanction in the case at issue.

We find the Supreme Court's analysis and treatment of the issue of attorney fees as a potential sanction for contempt in *In re Interest of Krystal P. et al., supra*, to be instructive and helpful in considering the similar issue in the present case. In both *In re Interest of Krystal P. et al.* and the present case, the issue on review concerns the propriety of imposing a sanction other than a fine or imprisonment for a litigant's contemptuous actions. As such, we conclude the relevant analysis, according to *In re Interest of Krystal P. et al.*, is whether the court would be justified in dismissing Tyler's petition outside the arena of contempt proceedings.

### 3. RESOLUTION

Tyler's actions in the present case clearly constitute direct contempt. We find that issue to be beyond serious dispute. Clearly, the district court judge was not obligated to sit idle and absorb such punishment from a litigant. The contemptuous actions were certainly punishable. The issue really is whether the court had the authority to punish in the manner chosen in this case.

We note that Tyler has a lengthy and significant history of litigious behavior in the courts of this jurisdiction. See *State ex rel. Tyler v. Douglas Cty. Dist. Ct.*, 254 Neb. 852, 580 N.W.2d 95 (1998). The Supreme Court has affirmed a holding of the Douglas County District Court limiting Tyler to filing one lawsuit per month when proceeding in forma pauperis. *Id.* A number of Tyler's previous lawsuits have been dismissed as frivolous, and most of his prior lawsuits, after using judicial resources which could be made available to other litigants, have been disposed of prior to requiring a trial on the merits. *Id.* However, we must be cautious in the present case to decide the merits of the issue independent of consideration that the litigant at issue is Tyler. Our resolution of this case must be governed with consideration that what sanctions are permissible for contemptuous actions are permissible against all litigants, and an otherwise impermissible sanction cannot be approved of in the present case solely on the basis that the litigant to be affected is Tyler.

The possible frivolity of the present action is not at issue at the current time, and Tyler's history of filing frivolous lawsuits must not cloud our treatment of the issue in the present case. On appeal, the defendants assert that the court was justified in dismissing the action pursuant to Neb. Rev. Stat. § 25-2308 (Reissue 1995). Section 25-2308 allows the court to dismiss the case or permit the affiant to proceed upon payment of costs if the allegation of poverty made in a poverty affidavit is untrue, or if the court is satisfied that the action is frivolous or malicious. According to the defendants, Tyler was proceeding under a poverty affidavit, his action was clearly frivolous, and the court was accordingly warranted in dismissing the case pursuant to this section. We disagree, however, because the court did not

make any finding of frivolousness. In fact, our review of the record indicates that it is impossible for us to make a finding of whether Tyler's petition is frivolous. The petition is not clear as to what relief is being sought, which is further evidenced by the posture in which the case has come to us: the defendants filed a motion to make more definite and certain. At the present time, we cannot determine whether the petition is frivolous or not; the district court did not make any findings on that issue, and in fact, the issue has not been litigated at all.

Following the reasoning and analysis espoused by the Nebraska Supreme Court in *In re Interest of Krystal P. et al.*, 251 Neb. 320, 557 N.W.2d 26 (1996), our resolution of the question of the propriety of dismissal of the petition as a sanction for contempt is governed by looking at the district court's authority to dismiss actions on the court's own motion outside the context of contempt proceedings. Neb. Rev. Stat. § 25-601 (Reissue 1995) allows the court to dismiss actions without prejudice on the court's own motion where the plaintiff fails to appear at trial, for want of necessary parties, or for the disobedience by the plaintiff of an order concerning the proceedings in the action. In the present case, none of these situations was present. There was no specific order of the court which Tyler was in violation of. As such, dismissal on the court's own motion was not properly achieved pursuant to this statutory provision. We are unable to find any other authority which would allow the district court to dismiss the petition on the court's own motion in the present case.

Section 25-2121 codifies the common-law tradition of imposing a fine or imprisonment as an appropriate sanction for contempt. In the present case, Tyler is already imprisoned, and his frequent use of in forma pauperis status indicates the unlikelihood that he has access to significant financial resources to pay a fine. This does not mean, however, that an additional term of imprisonment as a sanction for his contemptuous actions is infeasible. In *State v. Watson*, 182 Neb. 692, 157 N.W.2d 156 (1968), the Nebraska Supreme Court recognized that imposing prison time as a sanction for contempt is feasible even when a criminal defendant is already subject to imprisonment for a separate criminal offense. In *State v. Watson*, the court was pre-

sented with a factually similar case, in that the criminal defendant used a series of repetitive obscenities to berate the integrity of the trial judge. The defendant was found in contempt, and in addition to the prison time which the defendant faced as a result of his criminal conviction, the court imposed an additional 6-month sentence for the contempt finding. The Supreme Court approved of such a sanction.

Although we wholeheartedly agree that Tyler's conduct during this hearing was inappropriate and reflects unwarranted disrespect for the district court and the judicial process, we are not free to approve of the court's unwarranted dismissal of the action. Pursuant to our statutes, the court may only dismiss the case on the court's own motion in certain specified situations, none of which were present in this case. As such, we must reverse the court's dismissal, and remand the case.

## V. CONCLUSION

Because the court erroneously dismissed the case, the dismissal order is reversed, and the case remanded for further proceedings, including the imposition of an appropriate sanction for Tyler's contemptuous actions herein.

REVERSED AND REMANDED.

HANNON, Judge, concurring.

I concur with Chief Judge Irwin's opinion, but I wish to point out that because of Tyler's conduct, the court properly concluded the hearing. However, the judge stated, "Mr. Tyler, you're in contempt of court," but did not impose any sanction in Tyler's presence which is referenced in the bill of exceptions. The judge merely noted the sanction in what appears to be an unsigned trial docket note: "Based on plaintiff's contemptuous conduct during this hearing, this case is dismissed." I have serious doubts as to the validity of the order, but if valid, Tyler was punished for contempt without being present. In my opinion, the proceedings used by the trial court was too "summary," and amounted to no proceedings at all.

The lack of a formal order containing findings in accordance with the following authority is in my opinion also a fatal error. In *Gonzalez v. State*, 119 Neb. 13, 226 N.W. 801 (1929), the Supreme Court stated, in significant part: "A judgment of

[direct] contempt must state the facts constituting the contempt, and a judgment which merely states the conclusion of the court will not sustain a sentence of imprisonment for contempt." (Syllabus of the court.) This case is cited in *Tastee Inn, Inc. v. Beatrice Foods Co., Inc.*, 167 Neb. 264, 92 N.W.2d 664 (1958). In the latter case, the Supreme Court reviewed several cases involving direct contempt. The *Tastee Inn, Inc.*, case recognized that no complaint or charge was filed and then states:

> "It is not sufficient to state in a general way the conclusions of fact on which the conviction is based. The facts themselves must be stated, from which the reviewing court can see that the ultimate fact of guilt is properly and justly found. The findings of the court fail to meet this requirement. The record contains a bill of exceptions setting forth the proceedings in which the plaintiff was adjudged guilty of contempt. This does not aid the findings or supply such facts as should be contained therein."

167 Neb. at 267, 92 N.W.2d at 666. The conviction was reversed. While this case is probably without merit, it is at least theoretically possible that it is of great importance. In my opinion, the case must be reversed because no proper order was entered.

At the time of the contempt, the trial court was merely giving Tyler the benefit of a discretionary telephonic hearing under Neb. Rev. Stat. § 24-734(3) (Reissue 1995). The easy solution would have been for the court to end the hearing as it did and then to rule upon the motion before it without offering Tyler further opportunity to be heard by telephonic conferences. If Tyler would be unable to appear at the next hearing because of his imprisonment, so be it. Such would be a more appropriate procedure in my opinion than the one used by the trial court.

In my opinion, the sanction levied by the trial court merely manifests that Tyler succeeded in seriously bugging the trial judge and tying up the court system with his senseless vulgarity. I am sure that that is all he intended by his contempt.

SIEVERS, Judge, dissenting.

I must respectfully dissent. To conclude that Tyler's statements made directly to the trial court are contemptuous is no more difficult than saying that the sky is blue or that there is a

lot of sand at the beach. My esteemed colleagues find that a court cannot dismiss Tyler's lawsuit as punishment for his direct contempt. Direct contempt is that which occurs in the presence of the court so that the court has personal knowledge of the facts and no need to inform itself of them by witnesses or other evidence. *In re Contempt of Potter*, 207 Neb. 769, 301 N.W.2d 560 (1981). Tyler's conduct was direct contempt.

My colleagues analyze the matter under Neb. Rev. Stat. § 25-601 (Reissue 1995), dealing with the court's ability to dismiss actions without prejudice on its own motion. I believe that the more correct statutory analysis is under Neb. Rev. Stat. § 25-2121 (Reissue 1995), which provides that every court of record shall have the power to punish by fine and imprisonment, as for criminal contempt, persons guilty of disorderly, contemptuous, or insolent behavior toward the court. Admittedly, the statute does not include dismissal of the underlying action as an express statutory remedy. However, it has long been recognized that "[t]he power to punish for contempt is incident to every judicial tribune, derived from its very constitution, without any expressed statutory aid." *Kregel v. Bartling*, 23 Neb. 848, 852, 37 N.W. 668, 670 (1888). More recently, it was held that the courts of this state have the inherent power to do those things reasonably necessary for the administration of justice in the exercise of their jurisdiction. *Kovarik v. County of Banner*, 192 Neb. 816, 224 N.W.2d 761 (1975).

With these doctrines in place, it is appropriate to recognize the impossibility of meaningfully punishing Tyler for his direct contempt, except by dismissing the underlying action. This only puts a very brief brake on his hobby of litigation from his penitentiary cell. He has filed a storm of lawsuits, the great majority of which lack even a semblance of merit and do little but steal judicial resources (at taxpayer expense) from litigants who are before the trial and appellate courts in good faith. See *State ex rel. Tyler v. Douglas Cty. Dist. Ct.*, 254 Neb. 852, 580 N.W.2d 95 (1998) (district court order restricting Tyler to one lawsuit per month when proceeding in forma pauperis upheld by Supreme Court).

Therefore, the question against this backdrop is how to punish Tyler for his obviously contemptuous conduct given that he

has neither freedom nor money, the two matters provided for in the statutory provision on contempt, § 25-2121. I would hold that to punish Tyler by dismissing his lawsuit is an appropriate vehicle to address his behavior and is an appropriate exercise of the trial court's inherent power. In this instance, Tyler's conduct is also contrary to the underlying notion in our courts that litigants act like civilized adults. If Tyler's lawsuit cannot be dismissed as punishment for his profane verbal abuse of the trial judge, then we will have allowed Tyler to degrade the decorum and sanctity of our judicial process, all to no good purpose except his own amusement. I would affirm.